STURGES *v.* CARGILL and others.

Where the language of a will, necessarily confines the interest of the parent to his life, the courts in construing it, will lay hold of slight circumstances to raise a gift in the children, and avoid imputing to the testator the extraordinary intention of giving the property to the devisee or legatee over, and leaving the issue of the tenant for life unprovided for.

D. C. by his will, after providing for his wife, divided his real estate into five portions which were nearly equal. He first gave one of the portions to his executors in trust, and they were to hold it for the separate use of his daughter Jane during her life ; but the will was silent as to the trust estate after her death. The next portion he gave to his son Thomas in fee. The next portion he gave to his executors in trust, for the use of the wife of his son Henry during her life, and on her death the estate was to descend to Henry's children. The fourth portion was given to trustees in like manner, for the use of his son Edward during life, and

after his death, the estate was to go to Edward's right heirs. And the fifth and last portion, he gave in part, to his son David in fee, and in part to David for life, with remainder to his right heirs. The residue of his estate, the testator gave to his executors in trust, to divide it among his children and daughter-in-law before named, to and for the same estates, uses, limitations and trusts, &c., as before provided. He authorized his executors to sell any of the real estate, and on their selling any, they were to arrange it so as to make up the share out of which it was sold, equal to the other shares, so that no one of his children, or such devisees, should be losers by such sales, or less benefitted by his bounty thereby devised to them severally and respectively.

At the date of the will, his daughter Jane had a large family of children, and her husband was, in the testator's opinion, unfit to manage her estate. No reason or circumstance appeared which could have induced the testator to omit a provision for these children.

On the construction of the will, *held* that the effect of the devise was to vest the first parcel in the trustees, in trust for Jane for life, with remainder to her children.

Parol evidence in contradiction of the words of a will, or to add an omitted clause which will alter the effect of what is written, is inadmissible.

February 22, 1844.

THE bill was filed by the infant children of Henry A. C. Sturges, and Jane M. his wife, against the executors, devisees and legatees of their grandfather, David Cargill, who died on the 12th of June, 1840, leaving a large real and personal estate. By his will, dated May 21, 1840, he disposed of the whole of this estate in the manner which is stated in the opinion of the court.

The bill stated, and it was proved, that Silvanus Miller, Esq., after conferring with the testator, made a draft of his will at full length, which was afterwards read to him and approved; but through inadvertence in copying it, the clause was left out by which he expressly gave the remainder in fee in the share of their mother, to her children after her death. The omission was not discovered till after the death of the testator. He gave express directions to Mr. Miller to insert such a devise to the children of his daughter, Mrs. Sturges. The draft of the will containing this clause, was proved by Mr. Miller, and was read in evidence. The bill prayed to have the will amended by the insertion of the omitted paragraph, and for further or other relief.

The adult defendants made no objection to the claim. The

cause was heard on pleadings and proofs as to the infant de-
fendants.

*E. Paine,* for the complainants, cited 1 Story's Eq. Jur.
190; 2 ibid. 319; 1 Atk. 415; 3 Bro. C. C. 303, 446; 4 Ves.
49, 51; 12 Ves. 279.

*E. Wilkes,* for the defendants.

THE ASSISTANT VICE-CHANCELLOR.—The adult parties
interpose no objection to having the devise and bequest of the
testator to his daughter Mrs. Sturges, extended so as to vest the
same in her children at her death; conceding that such was
the intention of the testator. The counsel in behalf of the
infant defendants, who can assent to nothing, very properly
submits their rights to the judgment of the court.

If the court were at liberty to act upon parol testimony of the
testator's intention, nothing can be clearer or more satisfactory
than the evidence in this case.

The positive testimony of the counsel who drafted the will,
and of T. S. Cargill, the executor and one of the sons, (who
testifies against his own interest;) together with the produc-
tion of the identical draft which was read over to the testator
and approved by him, and the circumstances of the family; do
not leave a shadow of doubt, but that the testator supposed
when he executed the will, that it contained the limitation
over to his daughter's children, which is found in the draft.

But this in general, is a dangerous species of testimony.
More caprice and instability of purpose is exhibited in testa-
mentary dispositions, than in any other of the transactions of
men which come under review in courts of justice. It is the
testator's WILL; and however strange or fickle it may seem,
the *will* when expressed, must govern. And it is therefore
said that in no instance will parol evidence be admitted in
contradiction to the words of a will.

In this case the parol evidence will add a clause to the will,
which may take one fifth of the estate, after the death of
Mrs. Sturges, from the other devisees and give it to her chil-

dren. This is the direct consequence, unless the devise to her children can be collected from the will itself; or unless the words are so doubtful and ambiguous, that a portion of the will must fail, without the aid of some extraneous light to determine the doubt.

If upon the construction of the residuary clause, the bequest of the residue is directly to the children, without any restriction in favor of the grandchildren ; the infant defendants would have no interest in the question, and the difficulty would be removed. The construction of that clause may operate upon interests not represented here, to such an extent, that I prefer to waive it, if a satisfactory conclusion can be attained on the other point.

To return then to the alleged mistake. Upon the will itself, the general intent of the testator is plain. The scope of the will is to distribute his estate in five equal or nearly equal portions, to the five branches of his family composed of four sons and one daughter.

He first makes a suitable provision for his wife. The very next object of his regard, appears to have been Mrs. Sturges. Her husband appears by the will, as well as by the extrinsic evidence, to have been incapacitated in the testator's opinion, from properly managing or controlling her estate. The testator therefore devises what he designs for her, to his executors in trust. Before examining this trust, let us pursue the order of the will.

He next devises a similar portion of real estate to his son Thomas in fee. Then follows a devise to the executors of a like portion or real estate, in trust for the use of his daughter-in-law, the wife of his son Henry A. Cargill, during her life with a discretionary power in the trustees to sell one house and lot, and apply its proceeds to all or any of Henry's debts ; and on the death of Henry's wife, the estate was to descend to his children, in the same manner as if he had owned it and had died intestate.

The testator next devised a like specific portion of his real estate to his executors in trust for his son Edward during his

life, the income to be paid to him in their discretion, and after Edward's death, the estate to go to his right heirs at law.

And lastly, the testator devises a similar portion of his real estate to his son David; of which a part is given to him in fee simple, and a part for life with remainder to his right heirs.

The will shows that the testator had a large personal estate, out of which a part of his wife's annuity was made payable. The capital is not disposed of otherwise than by the residuary clause, by which he bequeaths all the residue of his estate, real and personal, to his executors in trust, to divide and dispose of it to and amongst his children and daughter-in-law, and to and for the same estates, uses, limitations, trusts, &c., as before provided.

From this statement of the will, the design to dispose of all the real estate which the testator described specifically, and of the whole interest in that estate, is very manifest. It is also sufficiently apparent, that he meant to make the five branches of his family nearly or quite equal in their participation in his estate; giving life interests only to the children, with remainder to their issue, where the misfortunes or improvidence of his children made that course expedient.

There is another part of the will which makes this intention still more plain. He authorizes his executors to sell all or any of his real estate, and in case they do sell, the part so sold is to be accounted for and arranged *so as to make up the share* of the premises sold, which were by the will devised to any one of his children, *equal to the other*, to be estimated according to the amounts realized from such sales, so that no one of his children, *or such devisees*, shall be losers by such sale, or be less benefitted by his bounty, thereby devised to them, severally and respectively.

This clause establishes, beyond all doubt, the design to put each of his children and their families upon an equal footing. And the reference to devisees, as distinguished from children, shows also that he had in view his grandchildren, as taking in each instance where their parent was limited to a life estate.

In the particular devise in question, after vesting the specific portion designed for Mrs. Sturges, in the executors, with a gene-

ral habendum to them for the uses and trusts thereby created, concerning the same, it proceeds with an habendum for and during her life, and for her use and benefit, as to the proceeds, &c., not subject to the control of her husband, nor liable to his debts. And there the devise stops short.

Nor is there another word concerning this portion of the estate, to be found in the will, except the authority to the execu- tors to sell, which I have before stated; and except that, in describing a part of the lands devised to David, it is said to be " on the opposite side of the road to the premises *devised to my said executors* as trustees *for my daughter, Jane M. Sturges."*

In the devise to David of block N⁰. 22, in the Bloomingdale tract, it is left very much in doubt whether David takes that, as he does the parcel immediately preceding, for his life only with remainder to his heirs; or whether he has an estate in fee, as in the first parcel devised to him.

There is nothing in the will, and still less, if possible, in the relative situation, feelings, and circumstances of the testator and his daughter, Mrs. Sturges, as proved, from which I can infer that the testator intended to leave her large family of chil- dren destitute after her death, and give to the other branches of his family her portion of the estate.

The will shows no disposition to exclude any branch of the family, or to build up either one at the expense of another.

The children of Mrs. Sturges had as direct and immediate claims on his bounty, as those of Richard A. Cargill. The specific devise for Mrs. Sturges' benefit, commences with words sufficient to vest the whole estate in the executors. It is referred to afterwards, as being devised to the executors *for her*. It is no where devised again; and the whole will, shows that it was intended for the benefit of herself and her family. The limitation of a life estate, establishes that the issue were to take the inheritance, in the same manner that provision was made for Henry's children, after the death of his wife.

My conclusion is clear, that such was the intent of the testa- tor, and that the effect of the will when taken together is to vest this portion of the estate in the executors, in trust for the

separate use of Mrs. Sturges during her life, with the remainder to her children.

Mr. Jarman in his valuable treatise on wills, (1 Jarman on Wills, 500,) sustains this mode of construction. He says, "where the language of the will necessarily confines the interest of the parent to his life, the courts will lay hold of slight circumstances to raise a gift in the children, and thereby avoid imputing to the testator so extraordinary an intention as that the devisee or legatee over is to become entitled if the first taker have no child, but that the property is not to go to the child, if there be one, or its parent."

There must be a decree accordingly.