OHIEE JUSTICE ROBERTSON
delivered the oriNion or the court.
In the year 1863 Alexander Caldwell, a citizen of Campbell County, Kentucky, shortly before his death, published his last will, whereby he contemplated a proximate equality in the distribution of his estate among his six children, one of whom, James Caldwell, was then a soldier in the Confederate army. The testator, sympathizing with that son and the cause he had espoused, indicated a desire to secure to him “the home place” of nearly three hundred acres of land, which would not have exceeded the value of the devises to each of his other five children then near him. , But apprehending that James, if he should even survive the war, might by his rebellion against the Government of the United States forfeit his estate, he devised the legal title of the “home place” to his other five children, on a latent trust that if James should ever return, and be capable of holding the title, they should convey it to him. And this, according to satisfactory oral testimony, they understood and tacitly agreed to fulfill.
On his return, about the close of the war, there being no danger of forfeiture, two of those devisees, Daniel and William Caldwell, true to the trust, each conveyed to him one fifth of *517 the land, of the whole of which he thereupon took possession with the apparent acquiescence of the other three devisees of the home tract; and this possession he appears to have retained without disturbance or complaint for more than three years, when the three recusant devisees and the husband of one of them refusing to convey their interests to him, he on the 10th of September, 1869, brought this suit against them for enforcing their obligation under a resulting trust. His petition charging the trust was denied by their answer; and on that issue the circuit court decreed a release to James of their title, and by this appeal they seek to reverse that decree.
Implied trusts being excepted from the statute of frauds/ and perjuries, if the facts establish such a trust in this case, noj written memorial of it was necessary for enforcing it, nor was1' the oral testimony incompetent on the alleged ground that H contradicts the will. !
Extraneous testimony is incompetent to supply an unintentional omission or to contradict an expressed intention in a will. But the facts established by extrinsic evidence in this case have no such aim or effect. They are consistent with the testator’s intention, and with the concession that the will is just what he intended it to be, and they supply nothing which he unintentionally omitted. He intended to pretermit his son James as an express devisee of the land, and to rely for his benefit on the plighted honor of the express devisees. Might he not have done so securely on a promise that the five devisees would pay to James ten thousand dollars? And would proof of such agreement contradict the will, or supply any unintentional omission in it, without which omission his purpose of making James a co-equal beneficiary might have been frustrated by impending forfeiture?
The competency of oral testimony for establishing and enforcing such trusts as that claimed in this case is prescriptively recognized by undeviating authorities, among a great multitude *518 of which we only cite the following: Drakeford v. Weeks, 3 Atkins, 639; Barrow v. Greenhough, 3 Vesey, 152; Strickland v. Aldridge, 9 Vesey, 519; Maislar v. Gillespie, 11 Vesey, 639; 2 Powell on Devises, 415. To these citations we might, if deemed needful, add many others in England and America, and even in this court, illustrative of the same principles.
On the like principles the most familiar class of resulting trusts is upheld. Why else, where an unqualified title to land is conveyed to one, the law has adjudged that he holds it in trust for another on oral proof that the latter paid the consideration, in the absence of any fact authorizing a countervailing presumption ? In such a case there is no sale of land by the one to the other requiring writing, and the extraneous fact is admitted not to contradict the deed, but to prevent a fraud.
So here, had not the actual devisees been understood by the testator as accepting the devise in trust for James, an essentially different will would have been made, excluding their power over the land as devised; and consequently their refusal to execute the trust is a constructive fraud on the testator as well as on their brother James.
The proof of the trust is corroborated by the conduct of Daniel and William, by the testator’s purpose of equality, and by the apparent recognition of it by the acquiescence in the claim and possession by James for years since his return.
We are satisfied that the will was made as it is, with the mutual understanding of the trust as claimed.
Wherefore we conclude that the judgment of the circuit court is right, and therefore affirm it.