[S. F. No. 998. In Bank.—January 20, 1899.]

In the Matter of the Estate of ANNA YOUNG, Deceased. ANNA LOCKBIHLER et al., Appellants, v. C. H. YOUNG et al., Respondents.

ESTATES OF DECEASED PERSONS—DISTRIBUTION UNDER WILL—CONSTRUCTION—AMBIGUOUS REFERENCE TO DEEDS—PAROL EVIDENCE.—In con-

struing the will of a deceased person for distribution there-
under, deeds referred to therein, in order that they may be
considered as incorporated therein and made part thereof, must
be so clearly, explicitly and unambiguously described in the
will itself, as to leave their identity free from doubt, other-
wise the will is not wholly in writing as the law requires; and
a patent ambiguity in the description cannot be explained or
aided by parol evidence. Parol evidence is never admissible
to modify, change or vary the expressed intent of the testator.

ID.—FAILURE OF BEQUEST OR DEVISE—PARTIAL INTESTACY.—If the intent
of the testator in reference to a particular bequest or devise
cannot be deduced from the face of the will, the bequest or
devise fails, and there is a partial intestacy, as to the subject
matter thereof.

ID.— NONDELIVERY OF DEEDS — FAILURE TO DEVISE LANDS.—Deeds of
lands executed and acknowledged by the testatrix and her
husband, but not delivered by her during her lifetime, can have
no validity, if not sufficiently referred to and made part of
the will of the testatrix; and if the lands therein described
are not made the subject of a devise by the terms of the will,
there is an intestacy as to such lands.

ID.— INEFFECTIVE PROVISION FOR FUTURE DELIVERY.—A provision in the
will for the future delivery of deeds to the husband of the
testatrix, after her death, and for delivery to the grantee af-
ter her husband's death, assuming the deeds to be identified,
could not give to them as deeds any validity, or operate to
vest any interest in the grantee. Such delivery, if performed
as directed, would amount in law to nothing.

ID.—CONSTRUCTION OF WILL AS TO INTESTACY—INTENTION OF TESTATOR—
LEGAL EFFECT OF LANGUAGE.—Courts have leaned to such construc-
tion of a will as will avoid intestacy; but such construction can-
not be permitted, where the terms of the will fail to make a
legal devise; and if the legal effect of the expressed intent of
the testator is intestacy, he must be presumed to have intended
that result. The intention of the testator to be sought after
is not that merely which existed in his mind, but that which
is expressed in the language of the will.

ID.—BEQUEST OF MONEY—VOID TRUST—APPEAL BY HEIRS.—A bequest
of money vesting a present gift in a legatee is not affected
by a void trust postponing the time of enjoyment; and heirs
appealing from a decree of distribution of the amount of the
bequest to a trustee for the legatees are not injured thereby,
and are not entitled to a reversal of the decree upon that
ground, of which the legatee alone can complain.

ID.—NOTE AND MORTGAGE EXECUTED TO DECEASED WIFE—DISPUTABLE
PRESUMPTION—COMMON PROPERTY—TITLE OF HUSBAND.—A note and
mortgage executed to a deceased testatrix are presumed to be
her separate property; but such presumption is disputable, and
the court may receive evidence to show that they were com-

mon property, and not subject to administration in the wife's estate; and if the court so finds, upon sufficient evidence, the property is not subject to administration or distribution as any part of the wife's estate, but is properly left to the legal control of the husband.

ID.—HOMESTEAD DECLARED BY WIFE UPON SEPARATE PROPERTY—TITLE OF HUSBAND.—A homestead declared by the wife on her separate property by a declaration proper in form and in substance, if the property is of such a kind that it could be impressed with the homestead characteristics, descends upon her death absolutely to the husband.

ID.—PUBLIC INN—ADMISSION OF HOMESTEAD.—Under a petition by a husband for the setting apart of a homestead declared by his deceased wife upon a public inn, which was her separate property, and which was alleged in the petition to be a homestead, where no issue was joined in the superior court sitting in probate as to the validity of the homestead, but the contestants expressly admitted its homestead character, the validity of the homestead cannot be assailed upon appeal from a decree setting it apart to the husband.

APPEAL from a decree of distribution of the Superior Court of Napa County and from an order setting aside certain property as community property and from an order setting apart a homestead. E. D. Ham, Judge.

The facts are stated in the opinion of the court.

F. E. Johnston, for Appellants.

T. B. Hutchinson, for Respondents.

HENSHAW, J.—These are appeals by two sisters of the deceased, Anna Young, from the decree of distribution made in the matter of her estate, from an order setting aside certain property as community property, and from an order setting aside the homestead to C. H. Young, the surviving husband.

Anna Young died testate on the 29th of April, 1894, and in due time her will was admitted to probate. That will is as follows:

"Calistoga, the 15th of April, 1894.

"Anna Young's Will.—To C. H. Young, my husband, my bank book shall be handet to him, with gold watch and chain, also two deeds. After my husband deatts the two deeds shall go to Katarina Muhr. After all expenses are paid, the balance

of the money in bank shall be divided between C. H. Young and Katarina Muhr. Also my husband shall control all of my business, pay insuring, tax and repairs to property, furnish clothing to my niece, Katy Muhr, in reason, and her portion of the money in the German Savings Bank shall remain on interest until she is fifty years old.

"(Signed) ANNA YOUNG, my hand, seal."

The testatrix at the time of her death owned real estate in the counties of Napa and Sonoma which was her separate property. There was on deposit in the German Savings and Loan Society Bank of San Francisco the sum of two thousand two hundred dollars, which was also her separate property. She left a note and mortgage, which was executed to her by one Fales, and other personal property, over all of which there is a contest as to whether or not it was community property or a part of her separate estate. C. H. Young, the husband, was appointed administrator with the will annexed. In his petition for a final distribution he asked that the Fales note and mortgage and certain furniture be declared community property; that a certain piece of real estate which was the separate property of the deceased and upon which she had declared a homestead in her lifetime, be set aside to him as a homestead; that one-half of the money in the German Savings and Loan Society be distributed to him absolutely, and the other one-half be distributed to him in trust for Katarina Muhr until she arrived at the age of fifty years; and that the lands in the counties of Napa and Sonoma be distributed to Katarina Muhr subject to a life estate in himself. Objections were presented to the petition. On the hearing oral and documentary evidence was introduced, and the court made and entered its decree substantially in accordance with the petition, saving that the lands in Sonoma and Napa counties were distributed "to C. H. Young, as trustee, during his life, for Katarina Muhr; that he account to her for the proceeds thereof; and that upon the death of said C. H. Young the possession thereof be delivered to said Katarina Muhr, the owner of said property."

By the evidence taken at the hearing it was shown that on April 11, 1894, Anna Young was sick; she was looking forward to undergoing a surgical operation from which she might not

recover; she then made two deeds of grant, bargain, and sale
to Katarina Muhr, her cousin, whom she called her niece.  The
lands described in these deeds were her separate property.  One
was for all the land owned by her in Napa county, the other
for all the land owned by her in Sonoma county.  The husband
signed and acknowledged these deeds with her.  Witnesses were
called in to witness her signature, she stating to them that she
was making the deeds in view of the impending surgical opera-
tion; that the witnesses were young men and so would prob-
ably outlive herself and her husband, and she wanted her affairs
arranged in case anything should happen to her.  Four days later
she wrote her olographic will as above set forth.  She put
this will inside of her bank-book, and placed the bank-book in
its usual envelope.  The two deeds were enclosed in another en-
velope, which was sealed.  She wrapped the will, the bank-book,
and the deeds in a single package.  She went to a hospital in
San Francisco to undergo the operation, and handed this pack-
age to Katarina Muhr, saying: "There is my will and the two
deeds; put them in the office, and if I get well I will get them,
and, if I do not, you get them and give them to my husband."
Upon her death Katarina Muhr recovered the package and gave
it to C. H. Young.  The deeds thus identified were admitted
in evidence.  The court, in construing the will, adjudged the
two deeds mentioned in the will to be the deeds admitted in evi-
dence, and construed the direction in the will that the two deeds
should be handed to the husband and after the husband's death
"the two deeds shall go to Katarina Muhr" as vesting an estate
in Katarina Muhr, with the husband as trustee of the property
for her during his lifetime.

1. To the introduction of this evidence many objections were
taken and exceptions reserved.  It will not be necessary to con-
sider these in detail.  The rules governing the introduction of
evidence touching the interpretation and construction of wills are
all well settled.  Many of them are cast into succinct form in
the provisions of our code.  No more in wills than in any other
writing is parol evidence admissible to vary the terms of the in-
strument.  Parol evidence—even declarations of the testator—is
never admissible to modify, change, or vary his expressed intent.
(Civ. Code, secs. 1318, 1340.)  This must be deduced from the

face of the will, or the bequest or devise fails.    The apparent exceptions to this rule which allow parol evidence in the case of latent ambiguities, or to establish an implied trust, or to perfect imperfect descriptions of beneficiaries, or of the subject matter of a devise or bequest, are not true exceptions at all.   In no case is such evidence·allowed or considered to change the expressed intent.    The proofs afforded by such  evidence  are employed merely as an aid to the court in determining what in fact was the expressed intent.   In the same manner an existing writing may by reference be incorporated into and made a part of a will.    But, before such an extrinsic document may be so incorporated, the description of it in the will itself must be so clear, explicit and  unambiguous  as to leave its  identity  free from doubt.    The identification of the paper must be had from a description given in the will itself; otherwise the will is not wholly in writing as our law requires, but rests partly upon a writing and partly in parol.    (*In re Shillaber,* 74 Cal. 144; 5 Am. St. Rep. 433; *Chambers v. McDaniel,* 6 Ired. 226; *Phelps v. Robbins,* 40 Conn. 250; *Smart v. Prujean,* 6 Ves. Jr. 565; *Habarghan v. Vincent,* 2 Ves. Jr. 209; 1 Jarman on Wills, 6th ed., *98; 1 Redfield on Wills, 4th ed., *261, *et seq.*)

Applying these familiar principles of construction, it is apparent not only that the deeds are not referred to with sufficient definiteness to insure certainty in their identification, but that there is even a patent ambiguity in the very language of the will which attempts a designation of them.    There shall be handed to C. H. Young "two deeds."   Any two deeds executed by any person conveying any kind of an estate in any land would fill the measure of this requirement, so that to the admissibility of parol evidence to aid this clause there are two objections, each equally insurmountable; the first that the description of an extrinsic writing must be so definite as not to require such evidence; the second, that parol evidence is never admissible to explain a patent ambiguity. ' (Civ. Code, sec. 1318.)

But, were these objections to the consideration of the parol evidence entirely removed, there are yet others equally fatal to the construction which the court in probate has put upon this clause of the will.   There was no delivery of these deeds during the testratrix's lifetime.   What validity they possess, then, comes

from the will, and, therefore, if by act of the testatrix title to these lands passed, we must find in the will both an intent to devise them and operative words to effect the intent. We are not here unmindful of the rule that permits reference to an extrinsic writing duly incorporated into a will for the purpose not alone of determining the subject matter of a devise, but even for determining the character of the estate conveyed. (*Fesler v. Simpson*, 58 Ind. 83.) But in the case just cited, and in all such cases, there must in the will itself be found a clear intent to devise and words legally sufficient to create a devise. If such words exist at all in this will they are contained in this language: "To C. H. Young, my husband . . . . shall be handet . . . . two deeds. After my husband deatts the two deeds shall go to Katarina Muhr." Assuming a proper identification of the two deeds, there is left in this language nothing of doubt or uncertainty. The directions are plain, explicit; and not to be misunderstood. The intention of the testatrix, then, was that two paper instruments, in form grant, bargain, and sale deeds of her lands in the counties of Sonoma and of Napa, duly signed and acknowledged by her and by her husband, should at the proper time in the administration of her estate be handed to her husband, and after his death be handed to Katarina Muhr.

What effect would a compliance with the terms of these directions have upon the title to the real estate? Unquestionably, none. For this reason it is strenuously argued that, as the law favors a construction which avoids total or partial intestacy (Civ. Code, sec. 1326), and, as it is not to be supposed that a testator in so solemn an instrument as a will would exact the doing of a vain and empty thing, it must be certain that this testatrix intended to devise some estate in these lands to the husband and cousin, and that the decree of distribution should do so accordingly. It is true that courts have always leaned to constructions which will avoid intestacy, and their swift willingness in this regard has passed into a rule of construction, but there are well-defined limits beyond which the courts have not gone, and beyond which they could not go without subverting all rules and leaving the interpretation of every will to the mere caprice and whim of the chancellor. One of these rules, firmly established, and never departed from nor even criticised, is that the

expressed intent will not be varied under the guise of correction because the testator misapprehended its legal effect. The testator is presumed to know the law. If the legal effect of his expressed intent is intestacy, it will be presumed that he designed that result. The injury will not go to the secret workings of the mind of the testator. It is not, what did he mean? but, it is, what do his words mean? In *Bingel v. Volz,* 142 Ill. 214, 34 Am. St. Rep. 64, it is well said: "The purpose of construction as applied to wills is unquestionably to arrive if possible at the intention of the testator, but the intention to be sought for is not that which existed in the mind of the testator, but that which is expressed in the language of the will." To the same effect may be cited *Arthur v. Arthur,* 10 Barb. 9; *Caldwell v. Caldwell,* 7 Bush, 515; *Sturges v. Cargill,* 1 Sand. Ch. 318; *Rosborough v. Hemphill,* 5 Rich. Eq. 95; *Abercrombie v. Abercrombie,* 27 Ala. 489.

The case thus presented is one where the expressed intent of the testatrix is plain, but where a full performance of the acts which she has directed will amount in law to nothing. The testatrix, it may be assumed, did not understand the legal effect which would follow a compliance with her will, or thought that the legal effect would be other than it is. But a court for this reason is not justified in speculating over what may have been in the testatrix's mind, and in substituting what it may believe to have been her intent in place of the directions which she has actually employed. The inquiry of the court in construing a will comes to an end when the intent has been discovered from the language of the will. Its duty is then limited to giving effect to that intent so far as may be, without doing violence to express law or the mandates of public policy. It is never at liberty to supply omissions or to wrest language from its plain import, and give it such a meaning as it may be guessed the testatrix would have intended if she had known that her own efforts to create a legal devise had resulted in failure. (*In re Walkerly,* 108 Cal. 659; 49 Am. St. Rep. 97.) Here, to repeat, there is no doubt as to the language and its meaning. The testatrix merely mistook the legal effect which would follow a compliance with her directions. While no form of expression is required to create a devise, and while considering that wills are fre-.

quently made by ignorant people in a great extremity of sickness, and under an impending fear of immediate death, and while therefore, much liberality is and should be shown in construing the terms of such instruments, in every case some words must be employed from which under the rules of law an expressed intent to devise particular real estate must be found in the will itself; otherwise the court is not carrying out the last will of the deceased, but is making testamentary disposition of his property for him; not such disposition as the testator made, but such disposition as the court thinks he would have made.  This can never be permitted.  We may well leave this branch of the case with the following quotation from Buller, J., in the case of *Dacre v. Dacre*, 1 Bos. & P. (Butterworth & Son's ed.) 251: "I agree that a testator may express his intention by what words he pleases, and the court is so to expound his expressions that every word may stand if possible.  The court is to pronounce according to the apparent intent of the testator, but that intent must be found in the words of the will and is not to be collected by conjecture *dehors* the will, or, as my lord chief justice expressed himself in a late case, as the question has not been asked of the testator, it is but conjecture what would have been his answer.  I hold that if there are repugnant or inconsistent clauses the court must take the whole will and find the meaning as far as they can; but if the words are sensible, and there are none used but what may stand, then they must all so stand, and the will must be construed according to the plain meaning of those words, without any ingenious conjecture whether the testator meant more or not.".

2. Construing and giving effect to the terms of the will relative to the disposition of the money in the German Savings Bank, the court decreed "that one-half of all money on hand in said estate up to and not exceeding eleven hundred dollars is the property of Katarina Muhr under the terms of said will, but by the terms of said will it is not to be distributed to her until she attains the age of fifty years, and that said portion of. said Katarina Muhr's money be distributed to C. H. Young, as trustee for said Katarina Muhr, to be held by said trustee for said Katarina Muhr until she attains the age of fifty years, and that he account to her for the proceeds thereof."  As to this it

is argued that the court has given a construction not permissible under the terms of the will, and that by that construction a void trust is created.

It is to be remembered that, as the appellants and contestants are heirs of the deceased, they are not parties injured, if a valid bequest of the moneys was made under the will, no matter what form under the interpretation of the court was given to that bequest. In other words, these appellants are interested only, if the deceased died intestate, as to the money. Section 475 of the Code of Civil Procedure suffers a judgment, decision, or decree to be reviewed, modified, or reversed only when the complainant or appealing party has sustained or suffered injury by it. It is clear by the terms of this will that there was made to Katarina Muhr a present gift vesting immediately. The time of payment only was deferred. If the condition deferring the time of payment is repugnant to the gift, the condition and not the gift would be void. (*In re Walkerly, supra;* 1 Jarman on Wills, sec. 837.) Katarina Muhr is not complaining of the interpretation given to this clause, and, having gone so far as to see that a valid bequest of the money was made to her, appellant's concern in the matter is at an end, and we need be at no pains further to consider this question.

3. The so-called Fales note and mortgage were executed to deceased. From this the disputable presumption arises that they were her separate property. The court received evidence upon this question, as also upon the question of the title to certain articles of furniture, and decided that they were community property and therefore not subject to administration in the wife's estate. It is insisted by appellant that this evidence had no proper place in proceedings under a decree of distribution, the sole purport of which is to distribute the property under the will or under the laws of succession; and the question of what property belongs to the estate, and is in the hands of the representative for distribution, is determined by the decree settling the representative's final account. In this reliance is had upon the *Estate of Burdick,* 112 Cal. 387. This statement of the proposition by appellants is stronger than the law warrants and than the case above cited upholds. Wherever a man dies possessing both separate and community property, both pass into his estate

for the purposes of administration and distribution, and the final account will do no more than declare that such property was in the estate. It might not, and probably would not, determine the distinctive characters and kinds of property, but would leave that for the reception of evidence under the petition for distribution. Upon the other hand, where a wife dies no administration at all is to be had upon any but her separate property, and therefore it may well be argued that a final account decreeing that such and so much property is in the hands of the representative for distribution is an adjudication between the representative and the heirs and devisees fixing the status and character of that property. But, whether in this case the final account did so declare, and, further, whether under such declaration the administrator who shows himself to be the husband is estopped therefor and thereby from contesting the title because he has not appealed from the decree settling the final account, are questions which need not here be considered, for under the record presented they are merely speculative. The bill of exceptions does not present the final account, and it cannot therefore be said what adjudications upon these matters the decree settling it contained. So far as the case before us now is concerned, there is but a finding supported by evidence that the property in question was community property. Such being the case, it was not subject to administration or distribution in the wife's estate, as the court properly decreed.

4. A homestead had been declared by the wife upon what was admittedly her separate property. The declaration was proper in form and substance.

If the property was of such a kind as that it could be impressed with the homestead characteristics, there is no question but the title to it descended absolutely to the husband. (*In re Croghan*, 92 Cal. 370.) The validity of this homestead, which was upheld by the decree, is here attacked upon the ground that the property, though used as a home by deceased and her husband, was in fact a public inn or hotel. The petition for distribution alleged the homestead. The appellants in their written objections did not deny these allegations, but, to the contrary, affirmatively alleged the same facts. In no way is the validity of the homestead brought in question. "The rules of pleading and

practice in civil cases are applicable to proceedings in the probate courts. Issues joined in such proceedings are to be tried and determined by that court as in civil cases." (*Estate of Burton*, 63 Cal. 36.) No issue having been joined upon the question of the validity of the homestead it does not lie with appellants to assail the decree in this particular.

That portion of the decree which construes the will as creating a devise of the real estate described in "two deeds" mentioned in the will, and distributing the property in accordance with the devise so found, is reversed, and the court is directed to decree that this language in the will is insufficient to create a devise, and is inoperative for any testamentary purpose. In all other respects the decree is affirmed.

Temple, J., Garoutte, J., and Harrison, J., concurred.