## Best, as Receiver, et al. v. Melcon, et al.

(Decided March 7, 1919.)

### Appeal from Laurel Circuit Court.

1. Fraudulent Conveyances—Husband and Wife.—A wife having been deeded certain property by her husband at a time when he was solvent, the property being hers, she is privileged to thereafter dispose of it as she might deem fit, and a conveyance by her of said property, or a portion thereof, to a creditor of her husband is not a preferential conveyance under section 1910 of the Ky. Stats., nor can other creditors of the husband complain.

2. Trusts—Parol Testimony.—The objects and purposes of a latent trust or an express parol trust can be given or shown by parol testimony.

HAZELWOOD & JOHNSON for appellant Best, Receiver.

H. C. CLAY for John R. Boreing.

METCALFE & JEFFRIES and A. T. SILER for appellees A. H. Melcon, et al.

SAM C. HARDIN for W. B. and Elizabeth H. Catching.

OPINION OF THE COURT BY JUDGE QUIN—Affirming in part and reversing in part.

Prior to 1903 W. B. Catching was interested in certain mail contracts, having been engaged in this business for a number of years. The mail carrying service of the United States at one time was divided into four sections

and each year bids were opened for the carrying of the mail in these several sections, the successful bidder being required to give bond for the faithful performance of his duties. W. B. Catching and Vincent Boreing had been the successful bidders under these lettings for a number of years, and each made a large sum of money until the manner of letting was changed and contracts given to local people.

W. B. Catching was interested in the First National Bank of London, Kentucky, as a stockholder, director and later as president.

Between his marriage in 1881 and 1907 he lived for ten or twelve years in Washington, D. C. This was because of his work on the mail contracts, although he always retained a home in London.

On June 1, 1903, he conveyed his London property, consisting of seven pieces of land and improvements thereon, to his wife, Elizabeth H. Catching, the consideration being that his wife would assume and liquidate his entire indebtedness at that time, the amount thereof being stated in the deed. This deed was delivered to Vincent Boreing, and was never recorded. Some correspondence passed between Mrs. Catching and Mr. Boreing relative to this deed,from which it seems that Mr.Boreing told Mrs. Catching that he was holding the deed subject to her instructions, and that if she instructed him to record it he would do so, but it appears that W. B. Catching did not want the deed recorded. In a letter to Vincent Boreing, dated July 1, 1903, he said: "You must not think of filing that deed. After mature deliberation that would ruin me. I can't think of it. Not only ruin me but follow my children. I would rather die without a cent."

It is claimed by the appellant that W. B. Catching was drinking heavily at the time of the execution of this deed, and fearful that he would lose all of his property his wife and Mr. Boreing prevailed upon him to make this deed, which he did. On the other hand there is proof to the effect there was some marital trouble in the Catching family, and this was the reason for the execution of the deed.

Vincent Boreing died September 16, 1903. John R. Boreing, a son of the decedent, and administrator of his estate, in looking over his father's papers discovered this deed and it was sent to Mr. and Mrs. Catching. January 10, 1905, a new deed was executed by Mr. Catching

in which he conveyed to his wife the same property embraced in the earlier deed, but the amount of the indebtedness was not stated in the later deed, it being explained that some of the indebtedness existing in 1903 had been paid. This deed was acknowledged August 4, 1905, and recorded in the Laurel county clerk's office the next day.

Besides the property owned by W. B. Catching in London, Ky., he owned a residence in Washington, D. C., and this he conveyed to his wife about the same time that he conveyed the London property.

Notwithstanding the deed of 1905, the property continued to be assessed in the name of W. B. Catching and he seems to have had something to do with the management thereof, although the insurance on the property was carried in the name of the wife. The taxes were paid through the First National Bank, and it is not clear whether they were charged to Mr. Catching or his wife; she testified that she paid the premiums on the policies. Part of the property was destroyed by fire in November, 1910, and the proceeds of the policies were paid to Mrs. Catching.

Between 1905 and 1914 W. B. Catching became heavily involved in debt, a great deal of this apparently being due to the rebuilding of the property destroyed by fire, and being a portion of the property embraced in the deed of January 10, 1905, and as a result of this indebtedness several suits were filed in the Laurel circuit court, and the present appeal is in the consolidated suits filed against W. B. Catching, et al.

The doors of the First National Bank of London were closed on April 19, 1911, at the instance of the Comptroller of Currency of the United States, and Fred W. Weitzel was placed in charge as receiver.

About 1905 W. B. Catching owned 65 shares of stock in the First National Bank of London, the market value of which was about $200.00 a share, and by 1911 he and his wife had increased their holdings so that they owned 91 shares of the stock.

March 16, 1914, Mrs. Catching, her husband joining her, conveyed to Sam C. Hardin, her cousin and an attorney in London, as trustee, four parcels of land; thereafter on March 26, 1914, Sam C. Hardin, trustee, conveyed said property to W. B. Catching. A portion of the land included in the deeds above referred to was conveyed to R. M. Catching, a son, for a consideration of

approximately $2,000.00. On April 27, 1914, W. B. Catching and his wife conveyed to S. A. Lovelace the remainder of the property embraced in the deeds above referred to for a consideration of $6,500.00, the consideration being evidenced by two notes of $2,000.00 each, and one of $2,500.00, payable in six, nine and twelve months, respectively, after date, and to secure the payment thereof a lien was retained on said property. Around this deed centers most of the controversy of these suits. W. B. Catching had endeavored to dispose of this property before the conveyance to Lovelace, and after the conveyance he endeavored to dispose of the notes, and finally assigned and transferred them to the receiver of the bank. Failing to pay the first two notes S. A. Lovelace, in an endeavor to be relieved of liability on account of said notes, conveyed the property to the receiver, but he was told by the receiver that the latter could not release him from his liability thereon without the consent of the Comptroller of Currency.

December 26, 1908, Elizabeth H. Catching, for a consideration of $18,000.00, conveyed to the First National Bank a portion of the property received under the deed of 1905. December 3, 1913, she conveyed another lot to said bank in consideration of $1.00 and other valuable consideration.

In an endeavor to help the bank, then in an insolvent condition, Mrs. Catching on April 1, 1914, borrowed from R. R. Hardin, a nephew, the sum of $10,000.00, and executed a mortgage on her property to secure the payment thereof. On April 17, 1914, she borrowed the further sum of $5,000.00 from said nephew, secured by mortgage on her property, the purpose being to use this as a credit on the indebtedness of Mrs. Catching and her husband at the bank, and a part of it was so applied. On the 24th day of April, 1914, for the same purpose, Mrs. Catching borrowed from Lena Beutler $1,080.00, executing to said Lena Beutler a mortgage to secure the payment thereof.

August 20, 1914, John R. Boreing filed this suit against W. B. Catching and his wife, Elizabeth H. Catching, S. A. Lovelace, Lena Beutler, R. R. Hardin and the Bank of Williamsburg, alleging that he had become surety on a note of W. B. Catching, in the First National Bank of Corbin, in the sum of $3,000.00; said note was not paid at maturity and the bank brought suit against said Boreing and Catching. Judgment was entered and

execution levied on certain property alleged to belong to W. B. Catching, as well as on property of said Boreing. The property of the said Boreing was advertised for sale and same was sold to satisfy said execution. Boreing paid the amount of said judgment and execution, including the cost of sale, amounting to $3,160.84, and took an assignment from the First National Bank of Corbin of all its rights under said judgment and execution. Boreing thereafter caused an execution to be issued and sought to have it levied on the property of W. B. Catching. It was returned by the sheriff of Laurel county with the endorsement, "Within execution returned. No property found to satisfy this execution or any part thereof."

Boreing alleged that the deed of 1905 from W. B. Catching to his wife was for the purpose of defrauding the creditors of W. B. Catching; that W. B. Catching since said conveyance had put vast improvements on the property, and set up the mortgages to R. R. Hardin, Lena Beutler and the mortgage to the Bank of Williamsburg, to secure a note for $1,500.00; also alleged that the conveyance by the Catchings to Lovelace was without consideration, and for the purpose of defrauding the creditors, and asked that the conveyance of 1905 be canceled, as likewise the deed to Lovelace; and asked for a general order of attachment, and that he be given a superior lien on the property or any proceeds thereof.

December 26, 1914, the Southern National Bank of Louisville brought suit against the same defendants, on a note for $3,000.00, executed by W. B. Catching, March 5, 1914, pledging as collateral security 30 shares of the capital stock of the First National Bank of London, and asking for practically the same relief as the plaintiff in the preceding action.

The Cosmos Portland Cement Company also brought suit against W. B. Catching for a balance of $155.55 due for cement furnished said Catching.

January 9, 1915, the Bank of Williamsburg brought suit on a note for $1,000.00, executed by W. B. Catching, dated August 7, 1914. June 25, 1915, A. H. Melcon filed suit seeking judgment for $650.00 on account of a due bill executed October 10, 1901, to Vincent Boreing, which Melcon had purchased for the sum of 10c from the estate of Vincent Boreing.

These five actions were consolidated and heard together, and proof taken in the consolidated actions. A

vast amount of proof was taken and the case submitted before the Hon. Sidney Gaines, as special judge, and on March 24, 1917, he entered a judgment in thirteen paragraphs, those involved in this appeal being as follows:

"1.   That the petition of the plaintiff herein as against the defendant, Elizabeth H. Catching in so far as they seek to cancel or set aside the deed dated January 10, 1905, and executed by W. B. Catching to said Elizabeth H. Catching on August 4, 1905, which deed is recorded in the county court clerk's office of Laurel county, Kentucky, in deed book No. 27, at page 134, be and they are hereby dismissed and defendant, Elizabeth H. Catching, is adjudged to recover of the five plaintiffs herein her cost herein expended.

"2.   That the attachment lien of the plaintiff, John R. Boreing, and the vendor's lien claimed by John A. Best, the present receiver of the First National Bank of London, Kentucky, against the real property conveyed by W. B. Catching and wife to S. A. Lovelace on April 27, 1914, the deed for which is recorded in deed book 45, at page 517, records of Laurel county clerk's office, be and the same are disallowed and refused, to which said John R. Boreing and John A. Best, as receiver, except.

"4.   That the plaintiff, John R. Boreing, as assignee of the First National Bank of Corbin, Kentucky, is the owner of and entitled to collect from the defendant, W. B. Catching, a judgment heretofore rendered in this court in favor of said bank and against said E. B. Catching, amounting to the sum of $3,160.84, with interest thereon from July 14, 1914, until paid, subject, however, to a credit of $40.00 paid August 7, 1914.

"It is further adjudged that said John R. Boreing is not entitled to any of the relief sought in his petition, and said petition is now dismissed and the defendants therein, W. B. Catching and Elizabeth H. Catching, S. A. Lovelace, Lena Beutler and R. R. Hardin and John A. Best, as receiver of the First National Bank of London, Kentucky, are adjudged to recover of said John R. Boreing their costs expended in suit which is No. 2293.

"9.   That the defendant, John A. Best, as receiver of the First National Bank of London, Kentucky, have and recover of the defendant, W. B. Catching, the following sums, to-wit: $100.00 with interest thereon at the rate of six per cent per annum from the 24th day of September, 1913, until paid; the further sum of $1,200.00, with

interest thereon at the rate of six per cent per annum from Feb. 28th, until paid; also the further sum of $3,000.00 with interest thereon at the rate of six per cent per annum from the 8th day of March, 1914, until paid; also the further sum of $550.00 with interest thereon at the rate of six per cent from the 4th day of May, 1914, until paid; also the further sum of $2,250.00 with interest thereon at the rate of six per cent per annum from the 28th day of February, 1914, until paid; also the sum of $900.00 with interest thereon at the rate of six per cent per annum from the 4th day of March, 1914, until paid, and his costs herein expended on said cross-petitions. And said cross-petition of the defendant, Fred W. Weitzel, is dismissed as to the defendant, W. B. Catching, without prejudice as to all other claims mentioned therein.

"11. That the execution of the deed from W. B. Catching and wife to S. A. Lovelace on April 27th, 1914, for the following described real property, and the assignment by said S. A. Lovelace to Fred W. Weitzel, then receiver of the First National Bank of London, Kentucky, and the execution of the deed on Feb. 2, 1915, from S. A. Lovelace and wife to Fred W. Weitzel, receiver of said real property, operated as an assignment and transfer of all the property and effects of the defendant, W. B. Catching, for the benefit of all his creditors pro rata under and pursuant to the provisions of section 1910 of the Kentucky Statutes. Said real property so embraced and conveyed by said two deeds is lying in the town of London, Laurel county, Kentucky, and described as follows: (here follows description of property).

"And that the proceeds of the two above described tracts of real property when sold shall be applied first to the payment of plaintiff's cost herein and then to the payment of the foregoing judgments against W. B. Catching and such other valid claims against him as hereafter be filed herein properly proven and allowed by the court—no further proof of the judgments herein rendered against W. B. Catching being required. It is further adjudged that the plaintiffs, Southern National Bank of Louisville, Bank of Williamsburg, Kentucky, and A. H. Melcon, recover of John A. Best, receiver of the First National Bank of London, Kentucky, their cost in this behalf expended upon this branch of these causes. To all of this 11th paragraph of this judgment the defendant,

John A. Best, the present receiver of the First National Bank of London, excepts and prays an appeal to the Court of Appeals, which is granted.''

John A. Best, receiver, has prayed an appeal from paragraphs two and eleven of the judgment; appellees, A. H. Melcon, Southern National Bank of Louisville, and Bank of Williamsburg, have been granted an appeal by the clerk of this court from paragraph one of the judgment; John R. Boreing was not a party to these appeals, but he has filed a supplemental record and has made a motion for an appeal from paragraphs one, two, four and nine of the judgment, together with a statement of appeal, and this motion was passed to the hearing on the merits.

The deed of 1905. A reversal of paragraph one of the judgment which sustained the deed of 1905 is sought by appellees on the ground that it was an attempt to defraud the creditors of W. B. Catching, it being claimed that he was heavily involved in debt at the time, not only on notes and other obligations but by reason of certain liabilities on the mail contracts. There is some evidence to support this theory of the case, but we think the weight of the evidence sustains the decision of the chancellor as to this paragraph, because at time of this conveyance of the Laurel county property W. B. Catching had 65 shares in the First National Bank of London, which were worth approximately $200.00 a share, besides a residence in Washington, valued at from seven to eight thousand dollars, subject to a mortgage of approximately $3,000.00. According to the evidence of his wife and others, Mr. Catching was never compelled to pay anything on account of bonds executed in connection with his mail contracts. None of the debts sued on were contracted prior to the execution of this deed, with the exception of the Melcon due bill, and according to the testimony this was in reality an indebtedness of the Union Contracting Company, which was one of the companies organized to care for some of the mail contracts, and is fully explained by Mrs. Catching.

Without going into further details as to the testimony relative to the deed of 1905, we think it sufficient to say that the evidence sustains the chancellor, and we see no cause or reason to set it aside.

The Lovelace deed. The court reached the conclusion that this deed operated as an assignment for the benefit

of the creditors of W. B. Catching under section 1910 of the Kentucky Statutes. With this ruling we can not agree. Under the deed of 1905, the ownership in the property embraced within said deed passed to the grantee, Mrs. Elizabeth H. Catching, and became her absolute property, and she was privileged to do with it as she might see fit. She testifies that it was their endeavor to do what they could to decrease their indebtedness at the bank, as shown by the money she borrowed from her nephew, R. R. Hardin, and from Lena Beutler, and the payments of the indebtedness referred to in the deed of 1903, wherein she assumed the indebtedness of her husband, the assumption of which it appears from the record was accepted by the then existing creditors.

She testifies that she deeded this property to Sam C. Hardin in order for him to convey it to W. B. Catching, the money to be applied on the indebtedness of W. B. Catching at the First National Bank of London; that is, he was to sell the property and raise money on it to be paid to the First National Bank to be applied on his then existing indebtedness. Carrying out the instructions of Mrs. Catching, and in obedience to what she claims the purpose of the deed to Hardin, the proceeds of the lot sold to Mrs. Catching's son were turned over to the bank, and the three notes executed by Lovelace for the remainder of the property included in the Hardin deed were assigned and transferred to the bank's receiver. That Mrs. Catching had the right to direct just how the proceeds of this property should be applied goes without saying. She was the lawful owner, and since it was her purpose in conveying the property to the trustee to have the property used for the purpose of liquidating an indebtedness, not of Mrs. Catching but of her husband, we fail to see what right the creditors of W. B. Catching would have to object. The purpose of the trust was not disclosed in the deed, but the conveyance is to Sam C. Hardin, trustee, hence we have what might be termed an express parol trust, or as has been expressed in some cases a latent trust. Resulting trusts have been abolished in this state, Ky. Stats., sec. 2353; nor has the 7th section of the English Statute of Frauds ever been adopted here.

The original statute provided "that all declarations or creations of trust or confidences in any lands, tenaments, or hereditaments shall be manifested and proved by some writing signed by the party who is by law to

declare such trust, or by his last will in writing, or else they shall be entirely void, and of non-effect."

It is competent under the laws of this state to introduce parol evidence to show the purpose or nature of a trust and this has been done by Mrs. Catching, the trustor; and if the conveyance to Hardin and the conveyance by the trustee to W. B. Catching were in furtherance of this trust, as we believe they were, then the court erred in setting aside that conveyance. This is not what would be termed a resulting trust, which is a trust raised by implication or construction of law and is presumed to exist from the supposed intention of the parties to the transaction apart from any contract. It is an express trust, the nature of which is undisclosed, but we are not left to conjecture as to its objects and purposes.

In Caldwell, et al. v. Caldwell, 7 Bush 515, we find that one Alexander Caldwell was desirous of leaving his property by will to his six children, in equal parts, but James, one of his sons, being at that time a soldier in the Confederate army, and the testator being in doubt as to said son's right to hold property, he devised the home place to his remaining children on what the court says was a latent trust, that if James should ever return and be capable of holding the title they should convey it to him, "and this," says the court, "according to satisfactory oral testimony, they understood and tacitly agreed to fulfill." Upon his return from the war two of his brothers, true to the trust, conveyed him one-fifth of the land, the others refusing to convey. In this opinion, by Chief Justice Robertson, the court says: "Implied trusts being excepted from the statutes of frauds and perjuries, if the facts establish such a trust in this case, no written memorial of it was necessary for enforcing it, nor was the oral testimony incompetent on the alleged ground that it contradicts the will." . . . . "The competency of oral testimony for establishing and enforcing such trusts as that claimed in this case is prescriptively recognized by undeviating authorities, among a great multitude of which we only cite the following: Drakeford v. Weeks, 3 Atkins 639; Barrow v. Greenhough, 3 Vesey 152; Strickland v. Aldridge, 9 Vesey 519; Maislar v. Gillispie, 11 Vesey 639; 2 Powell on Devises, 415." See also Smith v. Smith, 121 S. W. 1002; Sherley v. Sherley, 97 Ky. 512.

The testimony of Mrs. Catching and her husband as to the nature and purpose of this trust not being success-

fully attacked we must presume that it is as stated by them, hence the record does not present sufficient grounds for setting aside the deed from W. B. Catching and wife to S. A. Lovelace, and it will have to be upheld.

Many other points are discussed in the briefs of counsel; among others, whether or not suits or pleadings attacking the Lovelace deed were in time under section 1911 of the statutes. It will be unnecessary, however, to discuss or decide these points.

The motion of John R. Boreing for an appeal is objected to because he was not a party to the original appeal. His motion will have to be overruled because of the conclusions we have reached.

Wherefore the judgment of the lower court as to paragraph 11 is reversed and the court will enter a judgment dismissing the petition and all other pleadings in so far as they asked to cancel or set aside the deed of April 27, 1914, from W. B. Catching and wife to S. A. Lovelace, and the deed from S. A. Lovelace and wife to Fred W. Weitzel, receiver, dated Feb. 2, 1915. In all other respects the judgment is affirmed.