[S. F. No. 7396.   Department One.—November 18, 1915.]

In the Matter of the Estate of ELLEN SESSIONS, Deceased. JESSICA R. JACKSON et al., Appellants, v. JAMES HUNTER et al., Respondents.

WILLS—DEVISE OF RESIDUE TO PERSON NOT RELATED TO TESTATRIX "AND TO HIS HEIRS AND ASSIGNS FOREVER"—NOT WORDS OF SUBSTITUTION. Under a devise of the residue of testatrix's estate to one not related to her, "and to his heirs and assigns forever," upon the death of the devisee before the death of testatrix, the heirs of the deceased devisee do not take the devise by substitution under section 1343 of the Civil Code.

ID.—CIRCUMSTANCES IN THIS CASE SHOWING INTENT.—The circumstances surrounding the making of this will are *held* not to show an intent to use the phrase, "and to his heirs and assigns forever," by way of substitution, but to show that the devise was made without any intention concerning the destination of the property, if the devisee should outlive the testatrix.

ID.—CONSTRUCTION—INTENT OF TESTATOR—HOW ASCERTAINED.—The intention sought for in resolving an ambiguity in a will is not that which may have existed in testator's mind, but that which is expressed in the language of the will, giving to it, if clear, its ordinary meaning, and if ambiguous, its proper meaning in the light of the context and the circumstances shown to explain it.

APPEAL from a decree of distribution of the Superior Court of the City and County of San Francisco. Thos. F. Graham, Judge.

The facts are stated in the opinion of the court.

Wm. O. Minor, and Peter A. Breen, for Appellants.

Cullinan & Hickey, H. M. Owens, and Frank J. Hennessey, for Respondents.

SHAW, J.—The appeal herein is from an order distributing the estate of the testatrix, Ellen Sessions, to her legal heirs, instead of to the heirs of William E. Jackson, who was named in her will as her residuary legatee.

Ellen Sessions died on August 5, 1913. William E. Jackson, the residuary legatee, died in 1911. He was not akin to the testatrix. The sole question presented for determination is whether the residuary bequest to Jackson lapsed upon his death, or whether it should be given to his heirs because of certain words in the residuary clause which, it is claimed, are words of substitution. With respect to a residuary devisee or legatee who is not a relation of the testator, or who, being a relation, leaves no lineal descendants, section 1343 of the Civil Code provides as follows: "If a devisee or legatee dies during the lifetime of the testator, the testamentary disposition to him fails, unless an intention appears to substitute some other in his place." The will of Ellen Sessions was executed in 1907, and was duly admitted to probate. The first clause names William E. Jackson as executor of the will. The second clause is as follows:

"I left my native place when I was quite young, visiting there a couple of times since, but from my relatives I have never had any assistance or consideration. When my husband died in 1894 he left me a draying and trucking business, which was impossible for me to carry on without assistance. I selected one whom I considered to be a good, steady man, namely William E. Jackson, to carry on the business under my direction. He proved all that I expected him to be, steady, attentive, industrious and efficient; the result was that the business which I would have been compelled to dispose of at a loss was carried on successfully and at a profit from the time of the death of my husband until the present time, and out of it I have made a considerable sum and a nice support.

"I have considered that when my time comes to leave this world, as I have no children, or anyone dependent upon me, the best thing for me to do with my property is to give it to those who have been kind to me, and not to a lot of relatives whom I know little of, and have never assisted me in any way.

"I make this preliminary statement so that those who read my will will understand the reasons which induced me to make it the way I have."

The residuary clause reads as follows:

"All the rest, residue and remainder of my property be it real, personal or mixed, and wheresoever situate, I give to the said William E. Jackson, and to his heirs and assigns forever."

The second paragraph of clause 3 was as follows: "I give to E. A. Bunce, remembering his friendship for my husband, the sum of five hundred dollars." The third and fourth clauses of paragraph 3 gave money legacies to two daughters of Bunce, and to Mary Shafter and Helen Shafter. In August, 1908, the testatrix by a codicil to her will declared "that the said E. A. Bunce having died since the making of said will, I now revoke said clause giving him $500." She also revoked the other money legacies above mentioned. In June, 1909, she added a codicil correcting a typographical error in the second clause of the will by stating that the year of her husband's death was 1889 instead of 1894, as stated therein. She did not make any change in the will after the death of Jackson in 1911. It is not made to appear, however, that she had any knowledge of his death, and we cannot consider that circumstance as indicative of her intent in framing

the residuary clause. No other extrinsic facts bearing on the meaning of the residuary clause are shown.

The claim is that the phrase, "to his heirs and assigns forever" following the name of William E. Jackson, in the residuary clause, is to be construed as expressing the intention that in case of Jackson's death before that of the testatrix, his heirs should be substituted for him as recipients of the residue.

The paramount object in resolving an ambiguity in a will is to ascertain the intention of the testator. All other of the established rules of construction are designed to assist in this main object. But the intention sought for is not that which may have existed in the mind of the testator, but that which is expressed in the language of the will, giving such language, if clear, its ordinary meaning, and if ambiguous, the meaning it should have, in the light of the context and the circumstances shown to explain the meaning. (*Estate of Young,* 123 Cal. 344, [55 Pac. 1011]; *Estate of Tompkins,* 132 Cal. 176, [64 Pac. 268].)

The argument of appellants is that the word "heirs" is not necessary to pass a fee; that, therefore, its use in the residuary clause in favor of Jackson must be ascribed to some other purpose, and that the only reason apparent for employing that word as a qualifier therein must have been to express the intention that Jackson's heirs should receive the property if he died before the death of the testatrix. This argument, they say, is reinforced by the terms of the second clause, which evinces a clear purpose to prefer Jackson to her own relatives.

It is true that for many years the word "heirs" has not been necessary, either in a will or a deed, to pass a fee in real property. (Civ. Code, secs. 1329, 1072.) It must be admitted that the use of that word may now, more readily than formerly, be deemed to indicate some other purpose. If the will bore evidence of having been framed by someone unfamiliar with the use and effect of words having a technical meaning in conveyances, this argument would have even greater force. But it was executed and attested with due formalities, and it bears evidence in itself that it was drawn by some person of skill and experience in such matters. It is common knowledge that the use of the phrase "to his heirs and assigns" in a disposition of the fee in real property still

persists, and is frequent, notwithstanding the fact that it is unnecessary for that purpose. In a will so drawn, therefore, when occurring in the customary place, as it does here, it has little significance of any intent other than the usual one to pass the fee. It is very unlikely that a person familiar with the law of wills and accustomed to draw instruments disposing' of property would have left the intention to provide for a substitution, to prevent a lapse in case of the death of the residuary devisees, so vaguely and ineffectively expressed as it would be by these words alone, or that he would have taken for that purpose words so long in universal use solely to dispose of a fee-simple estate. While the second clause shows the desire of the testatrix to prefer Jackson over her own kin, it discloses nothing indicating any wish to favor his heirs in case of his death. At the date of the will she was about seventy-five years old and Jackson was about forty-eight years old. It is a fair inference that she did not consider the probability that she might survive him. Furthermore, the word "heirs" occurs only in the phrase, "and to his heirs and assigns forever." This phrase is the regular ancient formula in a conveyance of the fee in real estate. No reason appears for giving to the word "heirs," as used therein, any greater significance than should be given to the word "assigns." The latter word would have been meaningless if used as a word of substitution. The most reasonable conclusion from the whole will is that the residuary clause was made without any intention at all concerning the destination of the property in case Jackson should outlive the testatrix.

This conclusion is fortified by a consideration of sections 1334 and 1335 of the Civil Code. Section 1334, among other things, declares that a testamentary disposition to "heirs" of any person, "without other words of qualification, and when the terms are used as words of donation, and not of limitation," vests the property in those who would be entitled to succeed to such person by the law of inheritance. Section 1335 is as follows:

"The terms mentioned in the last section are used as words of donation, and not of limitation, when the property is given to the person so designated, directly, and not as a qualification of an estate given to the ancestor of such person."

The residuary clause gives the property directly to Jackson. The words "and to his heirs and assigns forever," in the con-

nection in which they are used, and according to the usual acceptation of the phrase, do not purport to give anything to the heirs or assigns directly, but are merely descriptive of the estate of inheritance given to Jackson.  By the rule expressed in section 1335, and according to customary usage, they would be words of limitation relating to the estate given to Jackson, rather than words of donation to his "heirs and assigns." We think the court below correctly determined that there were no words of substitution.

The order is affirmed.

Sloss, J., and Lawlor, J., concurred.