[Civ. No. 4391. Third Appellate District.—July 25, 1931.]

In the Matter of the Estate of EMMA L. NORDGREN, Deceased. OUR LADY OF MERCY CONVENT, Appellant, v. LYDIA A. STONE, Executrix, etc., et al., Respondents.

Stephen P. Galvin for Appellant.

Conley, Conley & Conley for Respondents.

JAMISON, J., *pro tem.*—On the twenty-fifth day of June, 1929, deceased executed an olographic will, naming respondents as executors thereof. Her death occurred on November 3, 1929. Thereafter her will was duly probated. On August 20, 1930, respondents filed their first and final account.

On the eighth day of September, 1930, the court made an order settling the said account and decreed distribution of the estate. From the order settling the final account and from the decree of distribution the contestant Our Lady of Mercy Convent has appealed.

The testatrix by her will bequeathed to a number of her friends various sums of money, articles of jewelry and personal effects and made ten of her friends her residuary legatees. Among other bequests that she made was the following: "5000.00 (Five Thousand Dollars) also Building and Loan stock to our Lady of Mercy Convent."

It was stipulated that at the date of her death she was the owner of five shares of the capital stock of the Merced Mutual Building and Loan Association. It was further stipulated that deceased, at the date of her death was the owner of $13,000 on deposit with the following named building and loan associations, namely, the Pacific States Savings and Loan Company, the United States Building and Loan Association, the Mutual Building and Loan Association of Fresno, California, and the Fresno Guarantee Building and Loan Association, the said sum being evidenced by fully paid investment certificates; that the Pacific States Savings and Loan Company was a building and loan association; that

each of said four last-named associations had issued and outstanding a guaranteed capital stock, but that deceased at the date of her death did not own any capital stock of said last-named four associations.

By its decree of distribution the trial court distributed the five shares of the capital stock of the Merced Mutual Building and Loan Association to appellant, but over the objections of appellant distributed the $13,000 evidenced by the said investment certificates to the legatees to whom were willed legacies in specified sums with remainder to the residuary legatees.

Appellant contends that by the use of the words "also building and loan stock" the testator intended to will to it not only the five shares of the stock of the Merced Mutual Building and Loan Association, but also the said investment certificates.

The matter presented for determination is, therefore, what was the intention of the deceased in using these words. This intention must be gathered from that which is expressed in the language of the will. (*Estate of Young,* 123 Cal. 337 [55 Pac. 1011]; *Estate of Sessions,* 171 Cal. 346 [153 Pac. 231].)

The cardinal rule for the construction of wills is to ascertain the intention of the testator and this is determined from the words of the will, considering the circumstances under which it was made if there is any uncertainty in its language. (*Estate of Franck,* 190 Cal. 28 [210 Pac. 417].) In this case the court used the following language:

"The will and its entire scheme, the property disposed of, the persons named as devisees and legatees, the words and the context should be considered together, and words used in the will should be construed according to their surroundings."

Appellant's main reliance in its contention that the testatrix intended not only to will it the five shares of the Merced Mutual Building and Loan Association, but also the investment securities, is based upon section 1327 of the Civil Code, which is as follows:

"Technical words in a will are to be taken in their technical sense, unless the context clearly indicates a contrary intention or unless it satisfactorily appears that the will

was drawn solely by the testator, and that he was unacquainted with such technical sense."

Conceding that the word "stock" is a technical word as used in this will, there is nothing in the evidence indicating that the testatrix did not know the meaning of this word. On the contrary, it appears from a consideration of the entire will that she was a woman of intelligence and knew exactly what disposition she wished to make of her property. The fact that she also used the word "devise" in bequeathing her personal estate as indicating her ignorance of technical words is of little evidentiary value and does not destroy the *prima facie* presumption that she understood the technical meaning of the word "stock" as used by her in her said will.

The facts in the cases of *Tomlinson* v. *Bury,* 145 Mass. 346 [1 Am. St. Rep. 464, 14 N. E. 137], and *Clark* v. *Atkins,* 90 N. C. 629 [47 Am. Rep. 538], cited by appellant in support of its contention that stock should be construed as including investment certificates, are not similar to those in the instant case. In the first of these cases the testator willed all of his bank stock to his wife. He had, in fact, no bank stock but did have deposits in various banks. Under these circumstances it was held that the intention of the testator was to bequeath the deposits to his wife.

In the other case the testatrix willed bank stock in the Citizens' National Bank. She had never owned shares of stock in that bank but did have on deposit therein certain bonds. In this case it was held that, as the testatrix had no stock in the bank she intended to will the bonds, but through inadvertence or mistake used the word "stock".

The case of *Connecticut Trust & Savings Deposit Co.* v. *Chase et al.,* 75 Conn. 683 [55 Atl. 171], cited by respondents, is more nearly in point. The will in that case bequeathed all of the stock of testatrix in any and all corporations to certain persons. At the date of death of testatrix she owned, in addition to stocks, debenture certificates of a corporation issued for money borrowed, and convertible after ten years into shares of stock. It was held in this case that the debenture certificates were not stocks and that the bequest of stocks did not include these certificates.

The only evidence offered by appellant tending to establish the fact that testatrix was unacquainted with the meaning of the word "stock" was the testimony of a bank official who testified that the patrons of his bank commonly referred to investment certificates, when speaking of them, as stock, and the testimony of a secretary of a building and loan association that his clients commonly referred to them as stock, but neither of them testified that testatrix was a patron or client of the bank or association of which he was an official, nor did either of them testify that he ever heard the testatrix speak of her investment certificates as stock.

The testatrix bequeathed by her will $20,500 in specific cash legacies. There is left for distribution, after deducting the expenses of administration, the sum of $30,064.70. If appellant's claim is upheld and the $13,000 investment certificates are ordered to be distributed to it there would be left for distribution the sum of $18,429.70.

If the testatrix intended to bequeath the $13,000 investment certificates to appellant, then she performed an idle act in naming ten of her friends her residuary legatees and if the construction for which appellant contends is placed upon the will the specific legacies will have to be reduced. On the other hand, by adopting the trial court's construction of the will the specific legacies will be paid in full and the charitable provisions of the will carried out.

We are satisfied that the construction placed upon the will by the trial court should be upheld.

The order settling and allowing the first and final account and the decree of distribution are affirmed.

Preston, P. J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 24, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 21, 1931.