[Civ. No. 20345.   Second Dist., Div. One.   Oct. 18, 1954.]

Estate of R. ED. SULLIVAN, Deceased. CHARLOTTE L. SULLIVAN, Respondent, v. HARRIETT DENNIS et al., Appellants.

Ralph C. Curren, George H. Lowerre III and Helen Curren for Appellants.

William R. Grant and William N. Bowie, Jr., for Respondent.

DRAPEAU, J.—By his holographic will which was duly admitted to probate, testator left ''all my holdings personal and real, to my wife Charlotte L. Sullivan. Except I want to will or give to each of my *douthers* (sic) Harriett, & Clarabelle & Thula, $2,000.00 each. The money to be raised by sale of the SE ¼ of Sec. 26, Twp. 7 N Rg. 10 W or they may have the deed to settle same. My wife Charlotte is to have the right to sell anything else to finish improving the ½ interest I have in the NE ¼ of Sec. 2 7 N Rg. 10 W. so that the income should keep her. No lawyer or court is to misconstrue my intentions due to any technicality that may be wrong in this.

''R. Ed Sullivan

''All cash in bank to be her's (my wife) at once.

Place notes due me from <u>Jimmie Quick</u> and Ray Bob up for collection at once.''

Harriett, Clarabelle and Thula are testator's daughters by a former marriage.

Before his death, testator disposed of the SE ¼ of Section 26, the sale of which was to provide the funds to pay the legacies to the daughters.

In her final account and petition for distribution, said Charlotte L. Sullivan, as administratrix with the will annexed, alleged that the entire estate was community property; that it consisted of $127.75 cash, a 1936 Buick automobile, a house trailer and the undivided half interest in the property devised to her; that she advanced her own funds to pay costs of administration. And she prayed for distribution to her of the whole estate in accordance with the terms of the will. The three daughters filed objections to this and asked for distribution of $2,000 to each of them as provided in the will.

When the contest was heard, no evidence was taken, but it was stipulated that the said SE ¼ of Section 26 had been disposed of by testator prior to his death.

The trial court found that, under the terms of the will, it was decedent's intent that his three daughters take nothing and that his widow was entitled to the whole of the estate.

From the order settling final account and distributing the entire estate to the widow, the daughters appeal.

The question for decision is whether the will created specific or demonstrative legacies as to the daughters Harriett, Clarabelle and Thula. Those terms are defined in section 161 of the Probate Code as follows:

''*Specific.* A legacy of a particular thing, specified and distinguished from all others of the same kind belonging to the

testator, is specific; if such legacy falls, resort cannot be had to the other property of the testator;

"*Demonstrative.* A legacy is demonstrative when the particular fund or personal property is pointed out from which it is to be taken or paid."

Appellants argue that the legacies here in question are demonstrative. Respondent replies that the will created specific legacies in favor of the daughters. And that such legacies were adeemed by reason of the disposal of the subject property prior to testator's death.

"The problem as to whether a particular bequest is specific, general, or demonstrative has many times been considered by the courts. The cases from the various jurisdictions have not been entirely consistent in their determinations. Running through the cases, however, from this and other jurisdictions, are certain fundamental concepts which have been almost universally adopted. Thus, regardless of statutory definitions (see § 161, Prob. Code) the fundamental and controlling factor is the intent of the testator at the time the will was drafted as expressed in the will considered as a whole and in light of the surrounding circumstances. (*Estate of Jepson,* 181 Cal. 745 [186 P. 352] . . . The intention to be determined is whether the testator intended to give a specific thing, and that alone, or whether he intended to give a bequest that, in any event, should be paid out of his general estate. . . ." (*Estate of Jones,* 60 Cal.App.2d 795, 798 [141 P.2d 764].)

In *Estate of Jepson,* 181 Cal. 745, 747 [186 P. 352], it is stated: "Appellants claim as beneficiaries under a legacy the subject of which was the sum of Twelve Thousand Dollars invested at interest in certain mortgages. The mortgages in question were paid and canceled before the death of the testator. The lower court held that the legacy was specific and that there was, therefore, a plain case of ademption. Appellants, on the other hand, contend that the legacy was general or demonstrative, and that they are, consequently, entitled to twelve thousand dollars out of the general assets of the estate. . . .

"While it is true that a legacy is presumed to be general unless it clearly appears to be specific, especially where it is of a pecuniary character, the intent of the testator necessarily controls, and where it appears that his intent was to give a particular thing or a given sum of money, not generally but only from a specified and definitely ascertained source, the court has no choice but to give effect to that intent."

■ Where the bequest relates to realty, the following rule appears to be applicable: "Where specifically described land, or a part or share thereof, is itself devised, or where the proceeds of particularly designated land are the actual subject of the bequest, *or where certain land is designated as the exclusive source for the payment of a legacy,* the gift is specific." (57 Am.Jur., Wills, § 1413, citing *Doud's Estate,* (145 Pa. Super. 73, [20 A.2d 913, 914], in which the will directed the sale of "testatrix' real estate, specifically described, followed by several bequests in the following form: 'I give to . . . the sum of . . . to be paid from the amount received from the sale of my real estate.' '")

The language used in the will clearly indicates that testator intended to give his entire estate to his wife, except for the legacies to his three daughters.

■ And his holographic declaration: "The money to be raised by sale of the SE ¼ of Sec. 26 . . . or they may have the deed to settle same. My wife Charlotte is to have the right to sell anything else . . ."—further reveals that he intended such legacies to be specific and not general or demonstrative, because they were made payable from a specific and definitely ascertained source. Consequently, when he disposed of the land during his lifetime, the legacies lapsed.

■ As stated in *Estate of Goodfellow,* 166 Cal. 409, 415 [137 P. 12]: " . . . ademption is merely one of the ways in which a legacy lapses. One of the best definitions is that found in *Kramer* v. *Kramer,* 201 F. 248, 250 [119 C.C.A. 482]: 'Ademption of a specific legacy is the extinction or withdrawal of a legacy in consequence of some act of the testator equivalent to its revocation, or clearly indicative of an intention to revoke. The ademption is effected by the extinction of the thing or fund bequeathed, or by a disposition of it subsequent to the will which prevents its passing by the will, from which an intention that the legacy should fail is presumed.' This definition accurately fits the fact of the case at bar." Likewise here. The will was drawn July 2, 1949. Testator died January 31, 1952. In the meanwhile, he disposed of the property from the sale of which the legacies were to be paid. From this act arises the presumption that he intended the legacies should fail.

For the reasons stated, the order appealed from is affirmed.

White, P. J., and Doran, J., concurring.

Appellants' petition for a hearing by the Supreme Court was denied December 15, 1954. Traynor, J., was of the opinion that the petition should be granted.