[Civ. No. 4968. Fourth Dist. June 13, 1955.]

Estate of E. F. LOESCHER, Deceased. VESTA F. LOESCHER, as Executrix, etc., Respondent, v. BURT G. LOESCHER et al., Appellants.

Wallace G. Quinlisk for Appellants.

Staniford, Harris & Loomis for Respondent.

GRIFFIN, J.—Appellants Burt G. Loescher and Jack Loescher through his guardian, sons of deceased E. F. Loescher by a former marriage, filed objections to the first and final account and petition for distribution of respondent Vesta F. Loescher, executrix and widow of the deceased. This appeal is from the order approving the account and rejecting appellants' objections relating to allocation of debts, expenses of administration, and payment of family allowance.

After several introductory paragraphs, deceased made a specific devise in his will in paragraph Third, of certain specified money and other property to his wife. He then, in paragraph Fourth, recommended that his wife permit her share of their community property to be disposed of under a trust later created therein, and provided that the specific bequests made in paragraph Third should not become a part of said trust. The widow elected that her share of the community property should not pass under the will. Under paragraph Fifth, it provides:

"I give, devise and bequeath the residue and remainder of my estate, both real and personal, and wherever situate, to my said wife, VESTA FRANCES LOESCHER, as trustee, in trust for the uses and purposes hereinafter set forth:

"(1) The trust estate shall be divided into two (2) Trust Funds: namely; 'A' and 'B,' which shall constitute separate trusts.

"FUND 'A' SHALL CONSIST OF:

"(a) My wife's share of our community property, if she shall permit such share to pass under the provisions of this Will;"

(Subparagraphs b, c and d containing particularly described parcels of real property are omitted.)

"(e) Leasehold interest in Lots 12 and 13, SWANSON COLONY, in Section 21, Township 16 South, Range 21 East, M.D.B. & M., together with all trucks and farming equipment and all other property (except that specifically devised in Paragraph THIRD and by Trust Fund B of this my Last Will and Testament), whether real, personal or mixed, which I may own or to which I may be entitled at the time of my death.

"(2) FUND 'B' SHALL CONSIST OF:

"(a)" (A particularly described piece of real property.)

"Fund A and Fund B shall bear the burden of inheritance and estate taxes assessed against my estate in proportion to the value placed upon them by the California State Inheritance Tax Appraiser, appraising my said estate."

Respondent is the primary recipient of benefits from Fund "A" and appellants, in conjunction with Eduard F. Loescher, Jr., infant son of decedent and respondent, are recipients of benefits only from Fund "B." The court ordered that all debts existing at the time of death, expenses of administration, and family allowance, be allocated among the surviving wife's share of the community property, the property in Fund A, and the property in Fund B, in proportion to the appraised values of each. Fund B's share thereof is approximately $54,000 (approximately 25 per cent) out of a total of obligations and expenses in excess of $213,000.

It is appellants' contention that the probate court erred in making this order and that the property in Fund B should not bear any part of these obligations and expenses because it was a specific bequest and not a residuary bequest under section 750 of the Probate Code, which provides that such charges are taxable against the residue. The trial court found that the debts existing at the time of death should be allocated proportionately to the appraised value of the bequests made in trust funds A and B. The questions presented are: (1) Did the testator express his intention in the will that funds A and B should be on an equal basis in respect to these debts, expenses of administration, and family allowance? (2) Without regard to testator's expressed intention as to source of payment of these charges, are funds A and B both a part of the residuary gift to be treated as part of the residue of the estate? If either of these questions may be answered in the affirmative the order of the court must be affirmed.

In general, Probate Code, section 750, requires that debts, expenses of administration and family allowance shall be paid from such sources as the testator directs. If he ex-

presses no intention in this respect such charges are to be paid from the residue of the estate. Appellants argue that Fund B is a specific devise of real estate, notwithstanding it is in the residuary clause; that this bequest meets all the tests of a specific bequest; that the wording of the testator's will, paragraph Fifth, subdivision (1) shows that Fund B is a specific bequest; that there is sufficient property in the residue of the estate to pay the debts of the testator and the expenses of administration; and that it was therefore erroneous for the court to charge any of such debts and expenses to property specifically devised, citing such cases as *Estate of Bacigalupi*, 105 Cal.App. 578, 581 [288 P. 122]; *Estate of de Bernal*, 165 Cal. 223, 230 [131 P. 375, Ann.Cas. 1914D 26]; *Estate of Sullivan*, 128 Cal.App.2d 144 [274 P.2d 946]; *Holmes* v. *Hrobon*, 93 Ohio App. 1 [103 N.E.2d 845].)

It is appellants' main argument that although Fund B was created in a residuary clause of the will it nevertheless was a specific devise of certain described property and was intended and considered by deceased as a specific bequest, particularly in view of the deceased's reference to it in paragraph Fifth, subdivision (e) referring to the aforementioned property and "all other property (except that specifically devised in Paragraph THIRD and by Trust Fund B of this my Last Will and Testament)." The argument is that deceased described Fund B as being "specifically devised" property. An examination of this language might well indicate that the decedent was excepting that property admittedly specifically devised in paragraph Third, and, in addition, that property devised in Fund B. Whether the word "specifically" must be interpreted as intending to modify, be descriptive of, or apply to the devise under Trust Fund B is problematical. At least the expression used, when applied to the entire provisions of the will, was a subject for the court's interpretation as to whether deceased intended also to specifically devise Fund B to the beneficiaries named.

Respondent points out that the first consideration of the court must necessarily be an examination of the will to determine the testator's intent with respect to the source from which these charges should be paid. Classification of devises is primarily a matter of convenience of expression. Whether a devise is residuary, general, specific or administrative depends upon the intention of the testator as shown by the entire will. (Page on Wills, Lifetime ed. vol. 4, p. 101, § 1392; *Estate of Hendrix*, 77 Cal.App.2d 647, 654

[176 P.2d 398].) ■ There is a general presumption that a legacy is presumed to be general unless it clearly appears to be specific. ■ Where it is of a pecuniary character the intent of the testator necessarily controls, and where it appears that his intent was to give a particular thing or a particular sum of money, not generally but only from a specified and definitely ascertained source, the court has no choice but to give effect to that intent. ■ Where specifically described land is itself devised, or where the proceeds of particularly designated land are the actual subject of the bequest, the gift is generally considered to be specific. Regardless of statutory definitions, the fundamental and controlling factor is the intent of the testator at the time the will was drafted as expressed in the will when considered as a whole and in the light of the surrounding circumstances. (*Estate of Jepson*, 181 Cal. 745, 747 [186 P. 352]; *Estate of Sullivan*, 128 Cal.App.2d 144, 146 [274 P.2d 946].)

■ The intention sought for is not that which may have existed in the mind of the testator but is that which is expressed in the language of the will, giving such language, if clear, its ordinary meaning, and if ambiguous, the meaning it should have, in the light of the context and the circumstances shown to explain the meaning. (26 Cal.Jur. p. 883, § 199; *Estate of Sessions*, 171 Cal. 346, 349 [153 P. 231].)

■ Technical words are to be taken in their technical sense, unless the context clearly indicates a contrary intention, or unless it satisfactorily appears that the will was drawn solely by the testator, and that he was not acquainted with such technical sense. (*Estate of Coleman*, 189 Cal. 612 [209 P. 571].) ■ However, it has been said that where a will is drawn for a testator by an attorney, as in this case, a word or phrase which has a recognized technical meaning must be interpreted in accordance with that meaning. (26 Cal.Jur. p. 895, § 211; *Estate of Northcutt*, 16 Cal.2d 683 [107 P.2d 607].) Of course these principles should be applied to the entire will to determine the expressed intention of the testator as to the source of the payments in dispute, and the nature of the gifts. With this in mind, from an examination of the entire will, it shows that after disposing of the specific gifts in paragraph Third, paragraph Fifth clearly indicates that the *residue* and *remainder* of all other property is to be left to the widow in trust ''for the uses and purposes hereinafter set forth'': ■ The ''residue'' or ''residuum'' technically, is the remainder or that which remains after

taking away a part, in a will, and the presumption is that the testator used it in that sense unless a contrary intention clearly appears. Where a will is drawn for a testator by an attorney the word "residue," as used in the instrument, will be taken technically, and no resort can be had to artificial aid in its interpretation when natural reason and the circumstances of its insertion make clear its meaning. (*Estate of Scott,* 1 Cof. 368.) Apparently, the scrivener of the will considered all of the property going into this trust as the residue of the estate. After declaring it to be the residue, he then proceeded to set up two separate funds from the proceeds of the residuary legacy. This did not necessarily change such residuary bequest to a specific bequest. By the terms of the will Fund A, as well as Fund B were on an equal footing insofar as they should both bear the burden of inheritance and state taxes assessed against them. This provision is indicative that both funds were intended to be on a parity, and that the testator meant "residue and remainder" in a technical sense when he used those words, and intended the burdens of obligations and expenses of the estate to be shared by all of the property disposed of in the residuary clause. The construction placed upon this will in this respect by the inheritance tax appraiser and the State Controller coincides with that of the trial court, i.e., that Fund A and Fund B should bear the obligations in proportion to their value. Although such construction by an administrative agency is not binding on the court, it is entitled to some respect. (*Estate of Welsh,* 89 Cal.App.2d 43 [200 P.2d 139].) It is a cardinal principle of law that where the construction placed by a probate court on the terms of a will is reasonable and appears to be consistent with the intent of the testator, as expressed in the will, the appellate court will not substitute another interpretation even though it may seem equally tenable. (*Estate of Northcutt, supra.*)

Order and decree affirmed.

Barnard, P. J., and Mussell, J., concurred.