Filed 12/28/15  Estate of McShane CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| Estate of MICHAEL K. MCSHANE, Deceased. | B261360 |
| | (Los Angeles County Super. Ct. No. BP125367) |
| GWENDOLYN WHITE-MCSHANE, Plaintiff and Appellant, v. UNIVERSITY OF WISCONSIN SCHOOL OF BUSINESS et al., Objectors and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, David J. Cowan, Judge.  Affirmed.

Law Office of Matthew C. Brown and Matthew C. Brown for Plaintiff and Appellant.

Salisian Lee, Richard H. Lee and Natalie Rastegari; Law Offices of Tara L. Cooper and Tara L. Cooper for Objectors and Respondents.

# I. INTRODUCTION

Plaintiff, Gwendolyn White-McShane, appeals from an order denying her Probate Code section 11700[1] petition for determination of entitlement to a proposed distribution of the estate of Michael McShane. Plaintiff was Mr. McShane's wife and is his estate's executor. The objectors are: the American Cancer Society; the Mental Illness Foundation; the University of Colorado School of Business; and the University of Wisconsin School of Business. The objectors filed a statement of interest in a portion of Mr. McShane's estate.

Mr. McShane bequeathed in his will, "I leave my mutual fund [sic], checking accounts, listed stocks, bonds, and cash . . . to [plaintiff]." Mr. McShane's will also bequeathed money to the objectors in the general form: "I leave up to [monetary amount] from the proceeds from my mutual funds, stocks, cash, and bonds to [the objectors]." Plaintiff argues that the language of the will was in conflict. Because of the "up to" modifier, plaintiff maintains the gifts to the objectors were not enforceable directions to her. The objectors assert the meaning of the will was clear that Mr. McShane intended a gift to them. Following a bench trial, the probate court: denied plaintiff's petition; sustained the objections; and ordered distribution of the amounts listed in the will to the objectors. We affirm the probate court order.

# II. BACKGROUND

## A. The Will

On March 28, 2010, Mr. McShane executed his will. He named plaintiff, his second wife, as executor. The will disposed of his property in pertinent part as follows: "My residuary estate is all property I own at my death that is subject to this will that does

---

[1]     Further statutory references are to the Probate Code.

not pass under a general or specific bequest, including all failed or lapsed bequests. [¶] I leave my mutual funds up to $ 800,000 to [J]oyce [M]c[S]hane[.] If [J]oyce [M]c[S]hane does not survive me, I leave this property to [plaintiff]. . . . [¶] . . . [¶] I leave my mutual fund [sic], checking accounts, listed stocks, bonds and cash after first payment of $ 800,000 described above to [plaintiff]. . . . [¶] . . . [¶] I leave up to $ 250,000 from proceeds from mutual funds, stocks, bonds, and cash to the [U]niversity of [W]isconsin [S]chool of [B]usiness in [M]adison. [¶] I leave up to $150,000 from the proceeds from my mutual funds, stocks, cash, and bonds to the [U]niversity of [C]olorado [S]chool of [B]usiness in [B]oulder. [¶] I leave up to $50,000 from the proceeds from my mutual funds, stocks, cash, and bonds to the [M]ental [I]llness [F]oundation. [¶] I leave up to $ 50,000 from the proceeds from my mutual funds, stocks, cash, and bonds to the [A]merican [C]ancer [S]ociety. [¶] I leave $25,000 from the proceeds of my mutual funds to [K]aren [V]an de [C]astle. [¶] I leave $20,000 from the proceeds of my mutual funds to [J]ohn [V]an de [C]astle[,] [J]r. [¶] I leave my residuary estate to [plaintiff]." Ms. McShane was Mr. McShane's first wife. The Van de Castles[2] were his cousins.

The executor's powers as described in the will were to: retain property without liability for loss or depreciation; dispose of property by sale and to receive and administer the proceeds as part of his estate; vote stock and exercise options and privileges to convert bonds, notes, stocks or other securities; lease any real property of the estate; litigate or settle claims regarding his estate; and continue in any business that is part of the estate. The will directed the executor to have the probate done as simply and free of judicial supervision as possible.

On October 15, 2010, Mr. McShane died. On November 1, 2010, plaintiff filed for probate of Mr. McShane's will and for letters testamentary. On January 10, 2011, the probate court appointed plaintiff as the executor of Mr. McShane's estate. On June 20, 2011, the final inventory and appraisal of Mr. McShane's estate was filed. On December 5, 2011, the inventory and appraisal was further corrected.

---

[2] For clarity's purpose, the Van de Castles will be referred to by their first names.

B. Petition for Determination of Entitlement to Estate Distribution

On November 9, 2011, plaintiff moved for a determination regarding Mr. McShane's estate distribution under section 11700. Plaintiff contended Mr. McShane's intentions in his will were uncertain because the bequests to the objectors contained the words "up to." Plaintiff asserted this bequest conflicted with the provision which left the mutual funds, checking accounts, stocks, bonds and cash to her. Plaintiff argued no other disposition in Mr. McShane's will contained the term "up to." Plaintiff contended the distributions of Mr. McShane's estate should be made as follows: mutual funds amounting to $800,000 to Ms. McShane; $25,000 from the mutual funds proceeds to Karen; $20,000 from the mutual funds proceeds to John Van; all the mutual funds, checking accounts, listed stocks, bonds and cash to petitioner after paying Ms. McShane $800,000 as described above; and nothing to the objectors. Plaintiff argued the bequests to objectors was precatory in nature; that is, a wish or advisory suggestion which does not have the force of a legally enforceable direction. Plaintiff asserted Mr. McShane's true intent was to only provide enforceable bequests which were not conditional or precatory to: her; Ms. McShane, and the Van de Castles. On December 20, 2011, plaintiff filed the first and final account and moved for final distribution in accordance with her section 11700 petition.

On February 29, 2012, the objectors filed a statement of interest and opposition to plaintiff's petition. The objectors asserted that the phrase "up to" was also used regarding the distribution of $800,000 to Ms. McShane. The objectors contended plaintiff, by refusing to pay them, was violating her duty of impartiality as the executor. The objectors asserted that if Mr. McShane wanted only plaintiff, Ms. McShane, and the Van de Castles to receive gifts, they would not have been named as well. The objectors argued plaintiff, as executor, did not have discretionary control over whether to distribute a bequest to them. On June 12, 2012, they also filed objections to plaintiff first and final account and final distribution.

4

Plaintiff responded that Ms. McShane's bequest was required by a marital settlement agreement. The marital settlement agreement had been entered into between Ms. McShane and Mr. McShane. Plaintiff asserted that the clear meaning of the words "up to" meant she as executor must determine the amount of the bequests to the objectors, if any. Plaintiff declared she and Mr. McShane had conversations regarding the charitable distributions. Plaintiff asserted that Mr. McShane wanted her to determine the amount which went to each charity. Plaintiff sought to amend her initial petition to distribute: $2,500 each to the Universities of Wisconsin and the Colorado Schools of Business; $1,250 to the American Cancer Society; and nothing to the Mental Illness Foundation. Plaintiff cited the amounts donated by Mr. McShane during his life to these charities as precedent for the amounts she chose. On January 14, 2013, the probate court ordered that the final distribution be distributed as requested by plaintiff with the exception of $1.5 million to be held in reserve.

## C. Trial Briefs

On October 23, 2014, plaintiff and the objectors filed their trial briefs. Plaintiff asserted she had a discretionary special power of appointment regarding the bequests to the objectors. Plaintiff relied upon extrinsic evidence, namely the conversations she had with Mr. McShane during the drafting of his will. Plaintiff contended Mr. McShane's primary concern in making the will was to provide for her welfare.

The objectors argued plaintiff contradicted herself multiple times regarding interpretation of the will. The objectors cited her declaration that Mr. McShane wanted to provide modest gifts as bequests. But in her deposition, plaintiff testified it was her idea to leave money for charity. The objectors argued that plaintiff initially denied having any discretion to provide a gift of $800,000 to Ms. McShane. But when deposed, plaintiff claimed to have discretionary power over the distribution to Ms. McShane as well. The objectors contended the gifts to them were legitimate and reflected Mr. McShane's intent. The objectors cited Mr. McShane's attendance at and his regular

5

donations to both business schools.  The objectors contended the gifts to the American Cancer Society and the Mental Illness Foundation were tied to key events in Mr. McShane's life.  The objectors asserted Mr. McShane's mother's died from cancer.  And Mr. McShane's father suffered from a mental illness.

## D.  Trial

### 1.  Joyce McShane's Testimony

Ms. McShane was married to Mr. McShane from 1988 until 2008.  Ms. McShane described their divorce as amicable.  Ms. McShane was aware that Mr. McShane's father had been taken away in a straitjacket.  This occurred when Mr. McShane was in college.  Ms. McShane had a close relationship Mr. McShane's mother.  Ms. McShane was told by Mr. McShane that his mother had died from cancer.  Mr. McShane was an only child and he had no children.

Mr. McShane attended the Universities of Wisconsin and Colorado.  He donated money to these schools annually during his lifetime.  Mr. McShane handled his own financial affairs.  Ms. McShane and Mr. McShane's divorce agreement provided she would receive $800,000 upon his death.  Ms. McShane did not believe Mr. McShane intended to confer discretion upon anyone to distribute his assets upon his passing.  Ms. McShane believed that Mr. McShane intended to bequeath the gifts listed in his will to the objectors.

### 2.  Plaintiff's Testimony

Plaintiff married Mr. McShane on November 29, 2009.  Plaintiff testified that she and Mr. McShane prepared his will.  Mr. McShane told plaintiff to try to not give the $800,000 to Ms. McShane.  Plaintiff suggested to Mr. McShane that he pick three or four charities and leave them some money.  Mr. McShane told her that he was going to leave

6

the decision up to plaintiff for distribution. Mr. McShane's father had been institutionalized. This occurred when Mr. McShane was seven, contrary to Ms. McShane's testimony. At the time he wrote the will, Mr. McShane was making one-half million dollars annually. Plaintiff and Mr. McShane discussed bequeathing money to his relatives. Mr. McShane omitted bequeathing money to family members other than the Van de Castles because his family was "mean" to plaintiff and him after his remarriage.

Plaintiff in her petition for estate distribution asserted the objectors should receive nothing because they never contacted her after Mr. McShane's death and she had to make a decision. Plaintiff was afraid she may not have enough money to survive reasonably well. Plaintiff asserted Mr. McShane was very concerned about her welfare. At the time of Mr. McShane's death, plaintiff's sole source of income came from social security.

Plaintiff in a prior declaration had stated it was Mr. McShane who told her he wanted to provide modest gifts to certain charities and universities. The value of the stocks, bonds, and mutual funds at the time of trial was approximately $5.5 million. Mr. McShane had roughly $8 million in his estate. Mr. McShane never discussed the contents of the will with anyone other than plaintiff.

### E. Statement of Decision and Judgment

Trial was held on October 23, 27 and 28, 2014. At the end of trial, plaintiff offered, in the exercise of her discretion, to make an irrevocable pledge of one-half million dollars to the objectors payable upon her death. Both parties filed closing briefs. On November 20, 2014, the probate court issued its tentative statement of decision in favor of the objectors. On December 24, 2014, the probate court issued its judgment. Attached as the final statement of decision was the probate court's November 20, 2014 tentative statement of decision.

The probate court recited the pertinent parts of the will. The probate court noted that plaintiff was to receive the residuary estate and all mutual funds, checking accounts, stocks, bonds and cash after the $800,000 payment to Ms. McShane. The probate court

7

found that the "up to" term did not mean the gifts to the objectors were merely precatory. The probate court cited the instrument's language, Mr. McShane's past financial practices and the conversation between plaintiff and him while preparing the will.

The probate court noted the will did not state Mr. McShane had given plaintiff any discretion to decide what amount the objectors should receive. The probate court would not imply a power of appointment into the will for plaintiff. The court cited section 600 et. seq. as defining the very specific rules relating to appointment powers.

The probate court found the objectors' interpretation of "up to" more reasonable. The probate court found: "Where securities are involved, there is inherently always a possibility that the value might go down and that there might not be enough money to pay everyone. Hence, the bequests were contingent on the securities having the necessary value. As it turned out, however, there was no evidence that the securities had gone down in value, that there was not enough money to make the other bequests – or to provide for [plaintiff's] welfare . . . ." The probate court also found plaintiff was not credible concerning her own welfare. Plaintiff would receive over $6.6 million of Mr. McShane's estate. The probate court noted plaintiff had put a down payment of over $1 million on a home, incurred $1.2 million as a mortgage, spent money on a new Cadillac, traveled and gave to charities significantly.

The probate court issued its order on the petition for entitlement on December 24, 2014. The probate court denied the petition with prejudice and sustained the objections. The probate court ordered plaintiff to make the following distributions from Mr. McShane's estate: $50,000 to the American Cancer Society; $50,000 to the Mental Illness Foundation; $150,000 to the University of Colorado School of Business; and $250,000 to the University of Wisconsin School of Business. Each objector was to receive its respective amount plus an additional seven percent interest from October 16, 2011, in connection with plaintiff's final account of Mr. McShane's estate.

## III. DISCUSSION

### A. Plaintiff's Contentions and Standard of Review

Plaintiff presents two contentions. To begin with, plaintiff contends the probate court erred by ignoring the specific gift to herself of all his mutual funds, stocks, bonds and cash. This excludes the $800,000 payable to Ms. McShane under the divorce settlement. Also, plaintiff argues the probate court misinterpreted the "up to" language instead of using her interpretation.

Executors are personal representatives of an estate and their powers are limited by statute and the will. (*Estate of Palm* (1945) 68 Cal.App.2d 204, 211-212; *Perry v. Superior Court* (1938) 29 Cal.App.2d 114, 116.) The Court of Appeal has held, "When the powers and duties of the administrator are fixed by statute there is no inherent right to assume or exercise any power not conferred . . . ." (*Ibid.*; see 14 Witkin, Summary of Cal. Law (10th ed. 2005) Wills, § 464, p. 540 ["The powers of personal representatives are limited by statute and the will; they have no inherent powers."].) Section 21102 provides: "(a) The intention of the transferor as expressed in the instrument controls the legal effect of the dispositions made in the instrument. [¶] (b) The rules of construction in this part apply where the intention of the transferor is not indicated by the instrument. [¶] (c) Nothing in this section limits the use of extrinsic evidence, to the extent otherwise authorized by law, to determine the intention of the transferor." (See *Estate of Duke* (2015) 61 Cal.4th 871, 884.) Section 21120 provides in relevant part, "The words of an instrument are to receive an interpretation that will give every expression some effect, rather than one that will render any of the expressions inoperative." (See *Safai v. Safai* (2008) 164 Cal.App.4th 233, 245.) Section 21121 provides: "All parts of an instrument are to be construed in relation to each other and so as, if possible, to form a consistent whole. If the meaning of any part of an instrument is ambiguous or doubtful, it may be explained by any reference to or recital of that part in another part of the instrument." (See *Siegel v. Fife* (2015) 234 Cal.App.4th 988, 996.) Section 21122

9

provides: "The words of an instrument are to be given their ordinary and grammatical meaning unless the intention to use them in another sense is clear and their intended meaning can be ascertained. Technical words are not necessary to give effect to a disposition in an instrument." (See *Estate of Goyette* (2004) 123 Cal.App.4th 67, 70.)

Our Supreme Court has held: "'The paramount rule in the construction of wills, to which all other rules must yield, is that a will is to be construed according to the intention of the testator as expressed therein, and this intention must be given effect as far as possible.' [Citation.]" (*Estate of Russell* (1968) 69 Cal.2d 200, 205; *Estate of Hilton* (1988) 199 Cal.App.3d 1145, 1168.) To the extent the probate court's decision relied upon the language of the will and undisputed facts, we will apply de novo review. (*Estate of Jones* (2004) 122 Cal.App.4th 326, 331; *Estate of Herman* (1995) 39 Cal.App.4th 1525, 1529.) If the probate court's decision required resolution of disputed facts, its findings will be upheld if supported by substantial evidence. (*Estate of Blain* (1956) 140 Cal.App.2d 917, 920; *Estate of Fritz* (1951) 102 Cal.App.2d 385, 388.)

## B. Interpretation of the "Up To" Language

Because she received the mutual funds, checking accounts, stocks, bonds and cash as a specific gift, plaintiff argues there was nothing left to distribute. Gifts from stocks bonds, and other securities are usually held to be general gifts. (*Estate of Buck* (1948) 32 Cal.2d 372, 374; *Estate of Sullivan* (1954) 128 Cal.App.2d 144, 146; *Estate of Jones* (1943) 60 Cal.App.2d 795, 798 [stock distribution is general gift unless specifically identified].) Under petitioner's construction of the will, the provisions concerning the objectors would be effectively inoperative. This would violate the section 21120 requirement that all words of an instrument are to receive an interpretation that will give every expression some effect. (*Colburn v. Northern Trust Co.* (2007) 151 Cal.App.4th 439, 448, fn. 6 ["words of an instrument are to be interpreted to give every expression some effect"]; see 14 Witkin, *op. cit.*, Wills, § 199, p. 270.)

10

In order to sidestep the 21120 question, plaintiff asserts the "up to" language grants her the discretion to distribute the listed amounts to the objectors. Plaintiff argues her interpretation gives full and accurate meaning to each part of the will. She relies on *Estate of Collias* (1951) 37 Cal.2d 587, 588-590 (*Collias*). In *Collias*, the testator named his nephew as executor. (*Id.* at p. 588.) The will provided: "All the rest and residue of my estate, of every kind and description, and wherever situated, I give, devise and bequeath unto my nephew . . . at the time this instrument is signed. It is my desire and wish that my nephew . . . will give half of my estate to my nearest relative heir in Greece instructing him or her to distribute said half of my estate in equal shares to all my close relatives in Greece. In the event that my said nephew . . . shall predecease me, then said estate shall go and it is hereby bequeathed to my nearest relative in Greece to be distributed as above among the other relatives." (*Ibid.*) The probate court distributed the entire estate to the nephew with no qualifications. (*Ibid.*) The Greek relatives appealed. (*Ibid.*; see *Estate of Beauchamp* (1967) 256 Cal.App.2d 563, 566-567; *Estate of Moore* (1967) 253 Cal.App.2d 945, 950 & fn. 2.)

Our Supreme Court upheld the probate court's distribution order. (*Collias, supra,* 37 Cal.2d at p. 589.) Our Supreme Court ruled the word "desire" did not impose a command on the nephew. (*Ibid.*; see *Estate of Beauchamp, supra,* 256 Cal.App.2d at p. 567) Our Supreme Court noted that a desire would be treated as a command by an executor while it is a request to a devisee. (*Collias, supra,* 37 Cal.2d at p. 589.) Our Supreme Court acknowledged that the nephew here was both an executor and the sole devisee. (*Id.* at p. 590.) However, our Supreme Court concluded: "The desire and wish which follow are directed to the devisee and not to the executor. [Citation.]" (*Ibid.*) Plaintiff asserts that, like the nephew in *Collias*, she is both the executor and the devisee. Plaintiff contends that she had the authority to leave "up to" certain stated maximum amounts to the objectors.

*Collias* is inapplicable here. Mr. McShane's bequests in the will to the objectors do did not contain the terms "desire," "wish", or any such similar words. The words "up to" denote a maximum amount, which contemplates that these amounts may not

11

necessarily be available for distribution. "Up to" does not denote a "desire" or "wish" for plaintiff to do something. As the probate court in our case ruled: "[Plaintiff]'s contention that she should decide [whether to give gifts to the objectors] because it was her idea to start with[,] that [the o]bjectors receive a bequest[,] do[e]s not follow: Again, where [Mr. McShane] accepted her advice does not now give her the right to withdraw the consequence of what [Mr. McShane] then accepted."

Further, even when a testamentary instrument uses words such as "desire" or "wish," depending on the context, such language may create a mandatory duty on the part of an executor. The Court of Appeal has explained in the context of a testamentary trust: "Standing alone, article Fourth—'I give one-half (1/2) of all of my property, [. . .] to my grandchild, Joan [. . .]—would bequeath that portion of decedent's estate to Joan absolutely; therefore, by his first codicil—'It is my Wish that My Grand Daughters share—Joan Eldred—of My estate be Paid to Her In Monthly Instalments of $50 For each And Every Month,'—did the testator intend to impose a legally enforceable duty, or merely a moral obligation in connection with the property? Although it is true that words of wish, desire, hope or recommendation addressed to a devisee or legatee do not import a command, a trust or a charge (*Estate of Marti* [(1900)] 132 Cal. 666, [671-672]), and that to create a trust, the declared wish or desire must constitute a direction, imperative and mandatory, such words, under ordinary circumstances precatory in nature, became testamentary and imperative when used in direct reference to the estate and addressed or directed by the testator to his executor; they then, are construed not as a mere request limiting the estate given in absolute terms, but as a command. [(]*Estate of Lawrence* [(1941)] 17 Cal.2d 1, [7]; *Estate of Miles*[ (1945)] 72 Cal.App.2d 336, [343]; *Estate of Marti*[*, supra,*] 132 Cal. 666, [at pp. 671-672]; *Estate of Tooley*[(1915)] 170 Cal. 164, [166-169]; *Estate of Pforr*[ (1904)] 144 Cal. 121, [127-128]; *Estate of Hood*[(1943)], 57 Cal.App.2d 782, [74-76.)] The testator addressed the words of the codicil of November 21, 1955, directly to 'the Administrators.' Applying the above rules of construction, it is clear that a trust was created by will—the testator's wish was directed to the administrator (executor) not to a devisee or legatee, and thus became mandatory (*Estate*

12

*of Collias,* [*supra,*] 37 Cal.2d [at p. 590), creating a legally-enforceable duty." (*Estate of Burris* (1961) 190 Cal.App.2d 582, 589.)  Here, as noted, there is no reference to a wish or a desire.  There is no language in Mr. McShane's will which creates discretion on the part of plaintiff to withhold the stated amounts due to the objectors.

Even if the direction to fund the objectors is not a mere wish, plaintiff contends she has the power to choose whom to give proceeds from the estate which she refers to as a power of appointment.  (See 12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, § 145, p. 202 ["A power of appointment is a power given by the donor of property to the donee, which enables the donee to designate the persons (appointees) who are to take the property at some future time."]; accord, *Sefton v. Sefton* (2012) 206 Cal.App.4th 875, 882.)  Powers of appointment are only created through a creating instrument.  [See § 610, subd. (c) ("'Creating instrument' means the deed, will, trust, or other writing or document that creates or reserves the power of appointment."].)  There is no evidence of any instrument that conferred plaintiff an alleged power of appointment to her.  Plaintiff purported discretionary power is mentioned nowhere in the will.  Plaintiff thus lacks the discretion to choose when and how much to give to the objectors.

Plaintiff also contends that the "up to" language would be rendered meaningless under the probate court's interpretation.  As noted, the probate court interpreted "up to" to refer to how securities can go down in value.  The probate court construed Mr. McShane's intent to make a bequest of the maximum listed amount was contingent on whether the sum existed at the time of distribution.  Plaintiff asserts the sections 21402 and 21403 abatement provisions provide guidelines in the event the estate had insufficient funds for the bequests to the objectors.  (See § 21400 ["Notwithstanding any other provision of this part, if the instrument provides for abatement, or if the transferor's plan or if the purpose of the transfer would be defeated by abatement as provided in this part, the shares of beneficiaries abate as is necessary to effectuate the instrument, plan, or purpose."]; *Siegel v. Fife, supra,* 234 Cal.App.4th at pp. 996-997.)  Plaintiff argues that the probate court's interpretation would contradict the section 21120 requirement that all words in a testamentary instrument be given some effect.

13

We disagree. There is no evidence Mr. McShane was aware of the statutory abatement rules when he drafted his will. Thus, it is very reasonable for him to have included the "up to" language in his will in order to ensure his intent was carried out. Regardless of statutory abatement provisions, Mr. McShane's inclusion of the "up to" language for certain gifts would control how his assets would be distributed. The "up to" language is not rendered meaningless even if statutory abatement provisions come into play.

One final note is in order concerning the dispute over the "up to" language. California policy favors construction of a will to uphold a charitable bequest. (*Estate of Tarrant* (1951) 38 Cal.2d 42, 46; *Estate of Clementi* (2008) 166 Cal.App.4th 375, 385; *Estate of Breeden* (1989) 208 Cal.App.3d 981, 985.) Accordingly, we agree with the trial court's interpretation of the "up to" language as applied to the objectors' bequests.

## C. The Probate Court's Alleged "Ignoring" Parts of the Will

As noted, plaintiff argues that the probate court ignored or deleted parts of the will in its statement of decision. Plaintiff focuses on the probate court's finding in the statement of decision: "Part 5 of the Will states [petitioner] is to receive just the *residuary* estate." The plaintiff contends the probate court ignored the will's following language, "I leave my mutual fund [sic], checking accounts, listed stocks, bonds and cash after first payment of $ 800,000 described above to [plaintiff]." She argues the court effectively deleted this provision from the will by its ruling.

We disagree with plaintiff. The statement of decision expressly provides plaintiff was to receive the mutual funds, checking accounts, listed stocks, bonds and cash; less the $800,000 payment to Ms. McShane. There is nothing indicating the probate court actually ignored any provisions of the will. Rather, the probate court was required to give some effect to every word in the will. (See § 21120; see *Estate of Goyette, supra,* 123 Cal.App.4th at p. 70.) While the probate court used inaccurate language when describing plaintiff's gift as "just the residuary estate," she has not affirmatively

14

demonstrated prejudicial error.  (See *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800; *Pool v. City of Oakland* (1986) 42 Cal.3d 1051.)

**In a related vein, the probate court's resolution of the "up to" language constituted a consistent intereperation of the will as a whole.  (§ 21121; see *Siegle v. Fife*, *supra*, 234 Cal.App.4th at p. 996.)  As noted, Part 5 of the will contains a similar bequest to Ms. McShane, "I leave my mutual funds up to $[]800,000 to [J]oyce [M]cShane. . . ."  Ms. McShane received the full $800,000 bequest, not a lesser amount.  Part 5 contains both the "up to" bequests to the objectors and Ms. McShane.  Given the evidence, the probate court reasonably consistently applied the "up to" language and ignored nothing in the will's language.**

## IV.  DISPOSITION

The judgment is affirmed.  The objectors, the American Cancer Society, the Mental Illness Foundation, the University of Colorado School of Business and the University of Wisconsin School of Business, are to recover their appeal costs from plaintiff, Gwendolyn White-McShane.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P. J.

We concur:

MOSK, J.

BAKER, J.

15